UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  JANE A. RESTANI, JUDGE
_____

| | | |
|---|---|---|
| NORCA ENGINEERED PRODUCTS LLC, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No.  21-00305 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## **JUDGMENT ORDER**

Upon reading plaintiff's motion for summary judgment, defendant's cross-motion for summary judgment, and the parties' responses thereto, and upon consideration of other papers and proceedings had herein, it is hereby:

**ORDERED** that plaintiff's motion for summary judgment be, and hereby is, denied; and it is further

**ORDERED** that defendant's cross-motion for summary judgment be, and hereby is, granted, sustaining the ten-digit statistical reporting number of the merchandise at issue under 8431.49.9044, HTSUSA, and it is further

**ORDERED** that the merchandise consisting of counterweights weighing more than 400 kg but not more than 600 kg from The People's Republic of China qualifies for the exclusion set forth in U.S. Note 20(n)(43).

**ORDERED** that this action be, and hereby is, dismissed.


_____
JUDGE JANE A. RESTANI

Dated:  New York, New York
         This        day of              , 2023.

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  JANE A. RESTANI, JUDGE
_____

| | | |
|---|---|---|
| NORCA ENGINEERED PRODUCTS LLC, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No.  21-00305 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendant, the United States, hereby moves for an order granting defendant's cross-motion for summary judgment sustaining U.S. Customs and Border Protection's determination regarding the merchandise at issue, and dismissing this action.

The bases for defendant's cross-motion for summary judgment are set forth in the attached memorandum, Defendant's Response to Plaintiff's Statement of Material Facts Not in Issue, and Defendant's Statement of Undisputed Material Facts with exhibits cited therein.

WHEREFORE, defendant respectfully moves this Court to enter an order granting defendant's cross-motion for summary judgment in its entirety, and dismissing this action.

*Norca Engineered Products LLC v. United States*
Court No. 21-00305

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

*Of Counsel*:                                     By:    /s/ Aimee Lee
Mathias Rabinovitch, Esq.                                 AIMEE LEE
Office of Assistant Chief Counsel                         Assistant Director
International Trade Litigation
U.S. Customs and Border Protection                        /s/ Edward F. Kenny
                                                          EDWARD F. KENNY
                                                          Senior Trial Counsel
                                                          Civil Division, Dept. of Justice
                                                          Commercial Litigation Branch
DATED:  New York, New York                                26 Federal Plaza – Suite 346
            January 23, 2023                              New York, NY 10278
                                                          Attorneys for Defendant
                                                          Tel. (212) 264-0480

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  JANE A. RESTANI, JUDGE
_____

| | | |
|---|---|---|
| NORCA ENGINEERED PRODUCTS LLC, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No.  21-00305 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____ :

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIAL M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

AIMEE LEE
Assistant Director

EDWARD F. KENNY
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0480 or 9230
Attorneys for Defendant

Of Counsel:
Mathias Rabinovitch, Esq.
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

**TABLE OF CONTENTS**

BACKGROUND.................................................................................................................1

    A.  The Entries and the Subject Merchandise....................................................2

    B.  The Administrative Proceedings ....................................................................3

    C.  HQ H308870...................................................................................................5

RELEVANT STATUTORY PROVISIONS AND EXPLANATORY NOTES .........................7

QUESTIONS PRESENTED ............................................................................................9

SUMMARY OF ARGUMENT..........................................................................................9

ARGUMENT................................................................................................................10

I.     STANDARD OF REVIEW.......................................................................................10

II.    THE IMPORTED MERCHANDISE IS PROPERLY
      DESCRIBED BY STATISTICAL REPORTING NUMBER 8431.49.9044 ..................12

III.   NORCA'S UNSUPPORTED TREATMENT CLAIM IS UNFOUNDED .....................23

IV.   DEFENDANT AGREES WITH NORCA THAT ITS BACKHOE COUNTERWEIGHTS
      WEIGHING MORE THAN 400 KG BUT LESS THAN 600 KG ARE ELIGIBLE FOR
      THE EXCLUSION IN U.S. NOTE 20(N)(43).............................................................30

CONCLUSION.............................................................................................................32

**TABLE OF AUTHORITIES**

**Cases**

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970)...............................................................................................10

*Bausch & Lomb, Inc. v. United States*,
    148 F.3d 1363 (Fed. Cir. 1998) .............................................................................11

*Carl Zeiss, Inc. v. United States*,
    195 F.3d 1375 (Fed. Cir. 1999) .............................................................................15

*Celotex Corp. v. Catrett*,

477 U.S. 317 (1986)..............................................................................................10

*Clarendon Marketing, Inc. v. United States,*
   144 F.3d 1464 (Fed. Cir. 1998) ......................................................................11

*Ero Indus., Inc. v. United States,*
   24 CIT 1175, 118 F. Supp. 2d 1356 (2000)....................................................11

*Kahrs Int'l, Inc. v. United States,*
   645 F. Supp. 2d 1251 (Ct. Int'l Trade 2009)................................. 24, 25, 28

*Kent Int'l, Inc. v. United States,*
   264 F. Supp. 3d 1340 (Ct. Int'l Trade 2017)................................. 24, 25, 28

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)..........................................................................................10

*Motorola, Inc. v. United States,*
   509 F.3d 1368 (Fed. Cir. 2007) ...................................................... 27, 28

*Motorola, Inc. v. United States,*
   350 F. Supp. 2d 1057 (Ct. Int'l Trade 2004)......................................... 26

*Motorola, Inc. v. United States,*
   462 F. Supp. 2d 1367 (Ct. Int'l Trade 2006)................................. 25, 26, 28

*Orlando Food Corp. v. United States,*
   140 F.3d 1437 (Fed. Cir. 1998) ......................................................................11

*Peerless Clothing Int'l, Inc. v. United States,*
33 C.I.T. 24 (2009), 602 F.Supp.2d 1309..............................................26, 28

*Pillowtex Corp. v. United States,*
   171 F.3d 1370 (Fed. Cir. 1999) ......................................................................11

*Pomeroy Collection, Ltd. v. United States,*
   246 F. Supp. 2d 1286 (Ct. Int'l Trade 2002), *aff'd,*
   336 F.3d 1370 (Fed. Cir. 2003) ......................................................................11

*Pomeroy Collection, Ltd. v. United States,*
   559 F. Supp. 2d 1374 (Ct. Int'l Trade 2008)........................................15

*Rohm & Haas Co. v. United States,*
   727 F.2d 1095 (Fed. Cir. 1984) ......................................................................15

*Timber Products Co. v. United States,*

462 F. Supp. 2d 1342 (Ct. Int'l Trade 2006).......................................................18, 20

*Trumpf Med. Sys., Inc. v. United States*,
753 F. Supp. 2d 1297 (Ct. Int'l Trade 2010)........................................................10, 11

**Harmonized Tariff Schedule of the United States**

General Rule of Interpretation 1 .............................................................4, 8, 13

General Rule of Interpretation 6 .........................................................4, 8, 18, 19

Section XVII

Note 2(a) to Section XVI ..................................................................4, 19

Note 2(b) to Section XVI ............................................................4, 8, 18, 19

Chapter 84.............................................................................................19

Note 1 to Chapter 84 ..............................................................................19

Heading 8409 ......................................................................................19

Heading 8424 .......................................................................................2

Heading 8425 ..............................................................................*passim*

Heading 8426 ..............................................................................*passim*

Heading 8427 ..............................................................................*passim*

Heading 8428 ..............................................................................*passim*

Heading 8429 ..............................................................................*passim*

Subheading 8429.5 ........................................................................5, 18

Subheading 8429.52 ......................................................................5, 18

Subheading 8429.52.10 ..............................................................*passim*

Subheading 8429.52.1010 ...............................................................4, 12

Subheading 8429.52.1020 ...................................................................7

Subheading 8429.52.1030 ...................................................................7

Subheading 8429.52.1040 ...................................................................7

Subheading 8429.52.1050 ...................................................................7

Subheading 8429.52.50 ......................................................................7

Subheading 8429.52.5010 ...................................................................7

Subheading 8429.52.5090 ...................................................................7

Subheading 8429.59 .............................................................................7

Subheading 8429.59.10 ........................................................................7

Subheading 8429.59.1030 ...................................................................7

Subheading 8429.59.1060 ...................................................................7

Heading 8430 ................................................................................*passim*

Heading 8431 ........................................................................... 5, 7, 22

    Subheading 8431.49.90 ...........................................................*passim*

    Subheading 8431.49.9090 ...............................................................8

    Subheading 8431.49.9044 .......................................................*passim*

    Subheading 8431.49.9095 .......................................................*passim*

Heading 8448 .......................................................................................22

Heading 8466 .......................................................................................22

Heading 8473 .......................................................................................22

Heading 8484 .......................................................................................22

Heading 8487 .......................................................................................22

Chapter 85 ...........................................................................................22

Heading 8503 .......................................................................................22

Heading 8517 .......................................................................................22

Heading 8522 .......................................................................................22

Heading 8529 .......................................................................................22

Heading 8538 .......................................................................................22

Heading 8544 ..................................................................................................22

Heading 8545 ..................................................................................................22

Heading 8546 ..................................................................................................22

Heading 8547 ..................................................................................................22

Heading 8548 ..................................................................................................22

Chapter 87

      Subheading 8709.90.00 ............................................................................3

Chapter 99

      Heading 9903 ............................................................................................7

      Subheading 9903.88.01 ..........................................................................7, 8

      Subheading 9903.88.11 ......................................................................*passim*

      Subheading 9903.88.14 ..............................................................................8

U.S. Note 20(a) ..................................................................................................3

U.S. Note 20(b) ..............................................................................................3, 4

U.S. Note 20(i)(17) .......................................................................................... 23

U.S. Note 20(n) .................................................................................................. 8

U.S. Note 20(n)(43) ...................................................................................*passim*

U.S. Note 20(n)(44) ..........................................................................................30

U.S. Note 20(q) ..............................................................................................4, 8

U.S. Note 20(q)(90) ..................................................................................*passim*

**<u>Statutes</u>**

19 U.S.C. § 1625(c) ..................................................................................... 24, 26

19 U.S.C. § 1625(c)(1) .................................................................................24, 25

19 U.S.C. § 1625(c)(2) ...............................................................................*passim*

Trade Act of 1974, Section 301 ........................................................................1

**Rules**

USCIT Rule 56....................................................................................................10

USCIT Rule 56(c)...............................................................................................10

**Regulations**

19 C.F.R. § 177.12(c)(1)(i)................................................................ 25, 26, 27, 28

**Other Authorities**

83 FR 28710 (June 20, 2018).............................................................................8

83 FR 32181 (July 11, 2018)..............................................................................8

*Collins English Dictionary* - Complete and Unabridged, 12th Edition 2014..................17

*Webster's New World Dictionary*, Third College Edition (1988)............................ 16, 17

CBP Ruling HQ H308870........................................................................*passim*

CBP Ruling N304078 .........................................................................21, 24, 26, 27

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  JANE A. RESTANI, JUDGE
_____
NORCA ENGINEERED PRODUCTS LLC,                    :
                                                 :
                                                 :
                          Plaintiff,             :          Court No.  21-00305
                                                 :
             v.                                  :
                                                 :
UNITED STATES,                                   :
                                                 :
                          Defendant.             :
_____          :

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the United States (the Government), submits this memorandum in opposition to plaintiff's, Norca Engineered Products LLC. (Norca), motion for summary judgment and in support of our cross-motion for summary judgment.  Norca does not contest CBP's classification of its merchandise to the eight-digit level but disputes the applicable ten-digit statistical suffix because, in this case, the ten-digit level is determinative of whether additional duties are assessed pursuant to Section 301 of the Trade Act of 1974, Pub. L. 93-618 (1974) (Section 301 duties).

### BACKGROUND

Norca commenced this action to contest U.S. Customs and Border Protection's (CBP) classification of and assessment of Section 301 duties on its imported counterweights, which are installed on different models of the Doosan Bobcat mini-excavator.  This case centers on whether the counterweights are described by statistical reporting number 8431.49.90**44**, of the Annotated Harmonized Tariff Schedule of the United States (HTSUSA), which provides for "Parts suitable for use solely or principally

with the machinery of headings 8425 to 8430; Of machinery of heading 8426, 8429 or 8430; Other; Other; Other, **Parts of backhoes, shovels, clamshells, and draglines; Other; Other**" (emphasis added), as advanced by CBP, or described by statistical reporting number 8431.49.90**95**, HTSUSA, which provides for "Parts suitable for use solely or principally with the machinery of headings 8424 to 8430; Of machinery of heading 8426, 8429 or 8430; Other; Other; Other, **Other; Other; Other, Other**" (emphasis added), advanced by Norca.

**A.  The Entries and the Subject Merchandise**

This action covers one entry made at the Port of Seattle, Washington, on July 17, 2018, and 83 entries made at the Port of Chicago between August 7, 2018 and December 30, 2019.  The imported merchandise consists of twenty-five models of cast iron counterweights imported from The People's Republic of China.  The counterweights are designed solely to be used with certain models of the Bobcat mini-excavator.  *See* HQ H308870 at 2 (Pl. Ex. 4 at page 426 of 598); *see also* Pl. Ex. 7 (Pollan Dep.) at 12.  Each counterweight model is identified by the following unique Bobcat Part Numbers: 7171788, 7172448, 7172453, 7183302, 7222067, 7222068, 7228249, 7240291, 7251831, 7251832, 7251833, 7284786, 7286644, 7302559, 7307032, 7330614, 7331809, 7331812, 7331815, 7343686, 7353363, 7354316, 7357073, 7415671, 7415674.  The weights of each model of the counterweights are different and range from 130.3 kilograms (kg) through 1,419.7 kilograms.  Six of the twenty-five counterweight models that have weights between 400 kilograms and 600 kilograms, namely Part Numbers 7172448,

7228249, 7251832, 7331809, 7354316 and 7415671, are not at issue.[1]

## B. The Administrative Proceedings

Norca entered the merchandise under subheading 8709.90.00, HTSUS, as "Work trucks, self-propelled, not fitted with lifting or handling equipment, of the type used in factories, warehouses, dock areas or airports for short distance transport of goods; tractors of the type used on railway station platforms; parts of the foregoing vehicles[.]"  Upon review of the entry paperwork, CBP issued a Customs Form (CF) 28 requesting information on the subject merchandise.[2]  *See* Pl. Ex. 2 at page 23-25 of 598.  Norca provided product information in response to the CF 28 request, and CBP advised in a Notice of Action (CF 29) dated May 29, 2019, that the merchandise is classified under the eight-digit subheading 8431.49.90, HTSUS, because "the mini-excavators [that] the counterweights are installed on seem to be of the type provided for under HTS 8429." *See* Pl. Ex. 2 at page 21-22 of 598.  On June 4, 2019, in response to an inquiry by Norca's Logistics Manager, Ms. Caroline Boggs, CBP Import Specialist Veronica McKnight advised that the ten-digit statistical reporting number for the imported counterweights is 8431.49.9044.  *See* Pl. Ex. 2 at pages 19-20 of 598.  Between August 2019 and January 2020, CBP liquidated the counterweights under statistical reporting number 8431.49.9044, HTSUSA, with the assessment of Section 301 duties applicable to merchandise of subheading 8531.49.90 from the People's Republic of China.  *See* U.S.

---

[1]  As discussed further below, these six counterweight models are not subject to Section 301 duties because they are excluded from such duties by U.S. Note 20(n)(43).

[2]  Plaintiff's counsel agreed pursuant to an emails dated Jan. 19, 2023 and Jan. 23, 2023, that the redactions in Plaintiff's SOF at ¶¶ nos. 5, 6, 7, 15 and 43 (all of the redactions in Pltf's Statement of Undisputed Material Facts) are no longer considered confidential and do not need to be redacted.

Notes 20(a) & (b), Subchapter III, Ch. 99, HTSUS.[3]

Norca timely filed fifteen protests against the liquidations of the 84 entries at issue with Section 301 duties between December 11, 2019 and December 22, 2020. Specifically, Norca agreed that its counterweights are properly classified under the eight-digit subheading 8431.49.90, HTSUS, which provides for "Parts suitable for use solely or principally with the machinery of headings 8425 to 8430; Of machinery of heading 8426, 8429 or 8430; Other; Other; Other," but disagreed with CBP's determination of the applicable ten-digit statistical suffix. Norca posited that the merchandise is more appropriately described in statistical reporting number 8431.49.9095, HTSUSA, providing for "Other; Other; Other, Other" and not statistical reporting number 8431.49.9044, covering "Parts of backhoes, shovels, clamshells, and draglines; Other; Other." *See* Pl. Ex. 2 at page 9-17 of 598. Both provisions apply to parts suitable for use solely or principally with machinery of heading 8529, a heading that provides for "Self propelled bulldozers, angledozers, graders, levelers, scrapers, mechanical shovels, excavators, shovel loaders, tamping machines and road rollers."

In connection with Protest No. 3901-19-104467, Norca filed an application for further review (AFR) of the protest by Customs Headquarters, which was approved by CBP on February 2, 2020. *See* Pl. Ex. 2 at page 12 & 14 of 598. On November 10, 2020,

---

[3] U.S. Note 20(a) provides that "products of China, as provided for in this note, shall be subject to an additional 25 percent ad valorem rate of duty. The products of China that are subject to an additional 25 percent ad valorem rate of duty under heading 9903.88.01 are products of China that are classified in the subheadings enumerated in U.S. note 20(b) to subchapter III." U.S. Note 20(b), in turn, provides that "Heading 9903.88.01 applies to all products of China that are classified in the following 8-digit subheadings, except products of China granted an exclusion by the U.S. Trade Representative and provided for in . . . heading 9903.88.14 and U.S. note 20(q) to subchapter III of chapter 99[:] . . . 8531.49.90[.]"

CPB issued Headquarters (HQ) Ruling H308870, resulting in the denial of Protest No. 3901-19-104467 on April 6, 2021.  CBP subsequently denied the remaining 14 protests and AFRs at issue, citing HQ Ruling H308870.  *See* Pl. Ex. 2 at pages 425-430 of 598.

### C.  HQ H308870

In HQ H308870, CBP determined that the subject counterweights are described by statistical reporting number 8431.49.9044, and, thus, that the counterweights did not satisfy the exclusion provision pertaining to products described by statistical reporting number 8431.49.9095.  CBP based its decision upon facts provided by Norca in its protest.  Specifically, Norca stated that "[t]he excavators for which the counterweights are made and on which the counterweights are mounted are classified under heading 8429.52.1010, HTSUS."  *See* Pl. Ex. 2 at page 15 of 598; Pl. Ex. 4 at 428 of 598.  The HQ Ruling noted that subheading 8429.52.10, HTSUS, provides for "Self propelled bulldozers, angledozers, graders, levelers, scrapers, mechanical shovels, excavators, shovel loaders, tamping machines and road rollers: Mechanical shovels, excavators and shovel loaders: Machinery with a 360 [degree] revolving superstructure: Backhoes, shovels, clamshells and draglines."  *Id.*  The HQ Ruling noted that there is also no dispute that the counterweights are classified in subheading 8431.49.90, HTSUS, as a part suitable for use solely or principally with the machinery of heading 8429.  By application of GRIs 1 (including Note 2(b) to Section XVI) and 6, CBP concluded that the counterweights are classified under heading 8431 and specifically described by statistical reporting number 8431.49.9044, HTSUSA, which, in relevant part, provides for "Parts of **backhoes**, shovels, clamshells and draglines: Other: Other" (emphasis added).

The HQ Ruling explains that in the applicable HTSUS provision for the Bobcat

mini-excavator, specifically subheading 8429.52.10, the term "backhoe" is used to describe a type of excavator. That is because the provision for "backhoes" with a 360 degree revolving superstructure are found at the 8-digit level (8429.52.10), which is below the superior "5-digit" provision for "mechanical shovels, excavators and shovel loaders" (8429.5). Thus, all merchandise classified at the 8-digit level for backhoes with a 360 degree revolving superstructure is classified as a mechanical shovel, excavator, or shovel loader. Because a backhoe with a 360 degree revolving superstructure is not a mechanical shovel or shovel loader, CBP explained, the applicable superior provision term which describes the Bobcat machine is "excavator." The Bobcat machine is described at different subheading levels by tariff provisions for "excavators" and "backhoes." Therefore, CBP concluded, contrary to Norca's protest, the Bobcat mini-excavator cannot fall outside of the scope of the backhoe provision simply because it is an excavator. Rather, CBP described the machine for which the counterweight is a part as a backhoe excavator. CBP further concluded that, because the subject counterweight falls under statistical reporting number 8431.49.9044, the merchandise is not covered by the language of the exclusion found in U.S. Note 20(q)(90) to Chapter 99, HTSUS. The note covers counterweights for use on excavators and wheel loaders "described in statistical reporting number 8431.49.9095." Because the merchandise is not "described" in such statistical reporting number, CBP concluded that it is not covered by the exclusion.

On March 30, 2021, Norca filed a request to void the denial of the protests. CBP denied the request to void denial of the protests citing to the reasoning set forth in HQ H308870. *See* Pl. Ex. 2 at page 11 of 598. Norca then timely filed the captioned matter.

## RELEVANT STATUTORY PROVISIONS AND EXPLANATORY NOTES

The HTSUSA provisions under consideration are as follows:

| | |
|---|---|
| 8429 (con.) | Self-propelled bulldozers, angledozers, graders, levelers, scrapers, mechanical shovels, excavators, shovel loaders, tamping machines and road rollers: (con.) |
| | Mechanical shovels, excavators and shovel loaders: (con.) |
| 8429.52 | Machinery with a 360 [degree] revolving superstructure: |
| 8429.52.10 | Backhoes, shovels, clamshells and draglines |
| | New: |
| | Crawler mounted: |
| 10 | Hydraulic............................................. |
| 20 | Other................................................. |
| | Other: |
| 30 | Hydraulic............................................. |
| 40 | Other................................................. |
| 50 | Used or rebuilt...................................... |
| 8429.52.50 | Other............................................... |
| 10 | New................................................. |
| 90 | Used or rebuilt...................................... |
| 8429.59 | Other: |
| 8429.59.10 | Backhoes, shovels, clamshells and draglines........ |
| | New: |
| 30 | Backhoes............................................. |
| 60 | Other............................................... |

*     *     *

| | |
|---|---|
| 8431 | Parts suitable for use solely or principally with the machinery of headings 8425 to 8430: |
| | *     *     * |
| | Of machinery of heading 8426, 8429 or 8430: |
| 8431.49 | Other: |
| | *     *     * |
| 8431.49.90 | Other: |
| | Other: |
| | *     *     * |
| | Parts of backhoes, shovels, clamshells, and draglines: |
| | *     *     * |
| | Other: |
| 8431.49.9044 | Other. |
| | *     *     * |
| | Other: |
| | Other: |

Other:

8431.49.9095                                               Other.
                          *       *       *
9903.88.01    Articles the product of China, as enumerated
              in U.S. note 20 to this subchapter............[applicable subheading plus 25%]
                          *       *       *
9903.88.11    Articles the product of China, as provided for in U.S.
              note 20(n) to this subchapter, each covered by an
              exclusion granted by U.S. Trade Representative. [applicable subheading]
                          *       *       *
9903.88.14    Articles the product of China, as provided for in U.S.
              note 20(q) to this subchapter, each covered by an
              exclusion granted by U.S. Trade Representative. [applicable subheading]

Paragraph common to both U.S. Note 20(n) and 20(q):

The U.S. Trade Representative determined to establish a process by which
particular products classified in heading 9903.88.01 and provided for in
U.S notes 20(a) and 20(b) to this subchapter could be excluded from the
additional duties imposed by heading 9903.88.01 See 83 FR 28710 (June
20, 2018) and 83 FR 32181 (July 11, 2018).  Pursuant to the product
exclusion process, the U.S. Trade Representative has determined that the
additional duties provide for in heading 9903.88.01 shall not apply to the
following particular products, which are provided for in the enumerated
statistical reporting numbers:

List of products applicable to U.S. Note 20(n):
                          *       *       *
(43) Backhoe counterweights each weighing more than 400 kg but not
more than 600 kg (described in statistical reporting number
8431.49.9044).
(44) Excavator crawler shoes (described in statistical reporting number
8431.49.9044).

List of products applicable to U.S. Note 20(q):
                          *       *       *
(90) Counterweight castings of iron or steel, designed for use on
excavators and wheel loaders (described in statistical reporting number
8431.49.9095).
                          *       *       *
(92) Dredge cutter teeth, comprising parts suitable for use solely or
principally with the machinery of heading 8429 or 8430 (described in
statistical reporting number 8431.49.9090).

**QUESTIONS PRESENTED**

Whether Norca's counterweights imported from China are properly described by ten-digit statistical reporting number 8431.49.9044, HTSUSA, and fall outside the scope of the exclusion set forth in Note 20(q)(90).

Whether the merchandise consisting of counterweights weighing more than 400 kg but not more than 600 kg from China qualifies for the exclusion set forth in Note 20(n)(43).

**SUMMARY OF ARGUMENT**

Summary judgment is appropriate here because there is no dispute as to the subject merchandise.

Norca does not dispute that the counterweights are classified in subheading 8431.49.90, HTSUS, as "parts." Because the mini-excavator meets the common meaning of "backhoe," the counterweights are specifically described in statistical reporting number 8431.49.9044, HTSUSA, which provides for "**Parts of backhoes**, shovels, clamshells and draglines: Other: Other." (emphasis added).

Consequently, because the merchandise is described by statistical reporting number 8431.49.9044, it is not covered by the language of the exclusion from Section 301 duties found in U.S. Note 20(q)(90). That note covers counterweights for use on excavators and wheel loaders "described in statistical reporting number 8431.49.9095." Because the merchandise is not "described" in such statistical reporting number, it is not covered by that exclusion.

Further, any claim of treatment that Norca advances for the first time in its moving papers is unsupported. Norca can satisfy none of the criteria necessary to

establish that CBP accorded a treatment to Norca's importations of counterweights that was relied upon for two years and modified by the HQ ruling.  Specifically, Norca is unable to point to any particular entries giving rise to an alleged treatment, and it is obvious that Norca's reliance on a ruling issued to another importer involving rubber tracks used to propel machines such as excavators, loaders, crawlers, pavers, trenchers and other excavating machines, is not a product that is substantially similar to its counterweights.

Finally, for the counterweights at issue that weigh more than 400 kg but not more than 600 kg, that merchandise is also described by statistical reporting number 8431.49.9044 but qualifies for the exclusion for backhoe counterweights set forth in U.S. Note 20(n)(43).

## ARGUMENT

## I.     STANDARD OF REVIEW

Under Rule 56 of the United States Court of International Trade, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material only if it might affect the outcome of an action.  *See Trumpf Med. Sys., Inc. v. United States*, 753 F. Supp. 2d 1297, 1305 (Ct. Int'l Trade 2010).  In determining whether a genuine issue of fact exists, a court reviews the evidence submitted drawing all inferences against the moving party.  *See Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant bears the burden of demonstrating that

there exists no genuine issue of material fact that would warrant a trial. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The movant may satisfy this burden by noting that the party who will bear the ultimate burden of proof at trial cannot support an essential element of its claim. *See, e.g., Celotex*, 477 U.S. at 322-23.

Classification issues may be resolved through summary judgment. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998); *The Pomeroy Collection, Ltd. v. United States*, 246 F. Supp. 2d 1286, 1289 (Ct. Int'l Trade 2002) *aff'd* 336 F.3d 1370 (Fed. Cir. 2003). Summary judgment is appropriate when "there is no genuine dispute as to . . .what the merchandise is." *Ero Indus., Inc. v. United States*, 24 CIT 1175, 1179, 118 F. Supp. 2d 1356, 1359 (2000). In the absence of genuine factual issues, whether to grant summary judgment turns on the proper construction of the HTSUS, which is a question of law. *Clarendon Marketing, Inc. v. United States*, 144 F.3d 1464, 1466 (Fed. Cir. 1998). "Resolution of that issue entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed." *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999); *Bausch & Lomb*, 148 F.3d at 1365; *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). Courts look to the General Rules of Interpretation (GRI) and the Additional United States Rules of Interpretation (ARI) to construe and apply the HTSUS. *Trumpf*, 753 F. Supp. 2d at 1305. While reporting under the ten-digit statistical suffix is not classification, *per se,* analysis at the ten-digit level is analogous to classification and we apply general classification principals in this case.

## II.   THE IMPORTED MERCHANDISE IS PROPERLY DESCRIBED BY STATISTICAL REPORTING NUMBER 8431.49.9044

CBP correctly liquidated the imported counterweights under 8431.49.9044 as the counterweights fit the article description of the eight-digit subheading, which provides for "Parts suitable for use solely or principally with the machinery of headings 8425 to 8430; Of machinery of heading 8426, 8429 or 8430; Other; Other; Other" as well as the description at the ten-digit statistical reporting level providing for "Parts of backhoes, shovels, clamshells, and draglines; Other; Other." Norca agrees that the counterweights are classifiable pursuant to subheading 8431.49.90 HTSUS, *see* Pl. Br. at 6, but claims the correct ten-digit statistical reporting number is 8431.49.9095, with the ten-digit level of "Other: Other: Other: Other[.]" In other words, Norca claims that the article description providing for "parts of backhoes" under statistical suffix "44" does not apply to the counterweights at issue in this case, and rather that the basket statistical suffix "95" applies to its merchandise.

There is no dispute that the counterweights are parts of the Bobcat mini-excavator, illustrated below. There is also no dispute that the Bobcat mini-excavator is machinery of heading 8429. The crux of the parties' dispute arises from Norca's claim that the counterweights are parts of excavators and not parts of "backhoes" as described in the ten-digit statistical reporting number 8431.49.9044. Because the article descriptions at the statistical suffix level that apply to the counterweights is informed by the classification of the mini-excavators, for which the counterweights are a part, we demonstrate below that the Bobcat mini-excavators are "backhoes" under the tariff schedule, and specifically classified under subheading 8429.52.10; thus, the

12

counterweights at issue are "parts of backhoes" and correctly described by statistical reporting number 8431.49.9044.

We agree with Norca that the photo below depicts a typical mini-excavator and that the counterweights are part of the lower after portion of the mini-excavator and balance the machine's weight to prevent the excavator from tipping over.  *See* Pl. Br. at 2.



The mini-excavator illustrated above is made up of several parts.  Germane to the article description and classification of the mini-excavators, are the additional parts which are depicted in the diagram below: the boom, arm (stick), digging bucket, tracked crawler base upon which the superstructure rotates in a 360 degree arc, and a grading blade.



*See* Bobcat Diagram from Excerpt of E27z Service Manual (https:// takemanual.com /product/bobcat-e27z-service-manual-compact-excavator-b4b911001/) (website last visited by undersigned counsel on Jan. 20, 2023). The mini-excavator's digging equipment is comprised of a boom, arm (stick), and digging bucket. The boom, arm, digging bucket and superstructure can rotate in a 360 degree arc atop a crawler track base. The counterweights at issue work to balance the mini-excavator's weight, including the weight of the outstretched boom, arm and digging bucket, thereby preventing the excavator from tipping over.

The mini-excavators are classifiable under heading 8429.52.10, HTSUS as "Self propelled bulldozers, angledozers, graders, levelers, scrapers, mechanical shovels, **excavators**, shovel loaders, tamping machines and road rollers: . . . Mechanical shovels, **excavators** and shovel loaders: . . . **Machinery with a 360 [degree] revolving superstructure: Backhoes**, shovels, clamshells and draglines" (emphasis added). Because the mini-excavator is an excavator of heading 8429, it is first described by the

article description for "mechanical shovels, excavators and shovel loaders" that applies to articles classified under subheadings 8429.51 through 8429.59, HTSUS.  Further, because the machine contains a cabin atop the crawler base that is capable of revolving in a 360 degree arc, the excavator is described by the article description for "machinery with a 360 [degree] revolving superstructure" that applies to machinery of subheading 8429.52, HTSUS.  From there, as explained further below, the merchandise is described by the article description for "[b]ackhoes, shovels, clamshells and draglines" under subheading 8429.52.10, rather than the basket category of "other" under subheading 8429.52.50, HTSUS.  Doosan Bobcat North America, Norca's customer for the counterweights at issue, agrees that this subheading applies to the Bobcat mini-excavators they import.  *See* Pl. Ex. 4 (HQ H308870 at 2); Pl. Ex. 10 at 531 of 598 (NEP_00080).

The mini-excavators for which the counterweights are a part is a type of excavator that is described by the term "backhoe" under subheading 8429.52.10 based upon the undisputable facts involving the basic functions of the mini-excavators and the common meaning of the tariff terms at issue.  The term "parts of backhoes" described by statistical reporting number 8531.49.9044 thus refers to machinery described by the term "backhoe" in heading 8429, HTSUS.

The General Rule of Interpretation[4] (GRI) 1 calls for classification "'according to the terms of the headings and any relative section or chapter notes and, provided such

---

[4] Although it is undisputed that the GRIs statutorily apply to the eight-digit classification of the Harmonized Tariff System of the United States, they do not apply statutorily to the ten-digit statistical suffix that apply to the annotations of the HTSUS.  Although the GRIs do not explicitly provide for an interpretative analysis of the ten-digit statistical suffix, its guidance in interpreting tariff provisions is instructive and can be utilized analogously in determining the meaning of article descriptions for the statistical suffix.

headings or notes do not otherwise require, according to the following [GRIs 2 through 6].'" *The Pomeroy Collection, Ltd. v. United States*, 559 F. Supp. 2d 1374, 1385 (Ct. Int'l Trade 2008) (emphasis omitted).

The Court may "rely upon its own understanding of the terms used" or consult lexicographic or other reliable sources to define the tariff term. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). Significantly, the common and commercial meaning are presumed to be the same and the party who argues that a tariff term should not be given its common or dictionary meaning must prove that it has a different commercial meaning that is definite, uniform, and general throughout the trade. *See Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed. Cir. 1984). As with the eight-digit subheading level, in finding the proper ten-digit statistical suffix we focus on the terms of the relevant statistical suffixes at issue.

Because the mini-excavators are classifiable under subheading 8429.52.10 as "excavators . . . Machinery with a 360 [degree] revolving superstructure: Backhoes," the counterweights at issue undisputedly fall within subheading 8431.49.90 as "parts" of these machines, and the statistical suffix that provides for "Parts of backhoes." Considering the relevant terms of these provisions in turn, the common meaning of the tariff term "excavator" is stated in the *Webster's New World Dictionary*, *Third College Edition* (1988) as: "A person or device, such as a steam shovel, that excavates." *See* Def. Ex. 1. The definition of "excavate" is stated in the *Webster's New World Dictionary, Third College Edition* (1988) as: "1. To make a cavity or hole in; dig out. 2. To form (a tunnel, for example) by such hollowing out; dig. 3. To remove (soil) by digging or scooping out. 4 To expose or uncover by digging." *See* Def. Ex. 1. The common

meaning of "backhoe," the tariff term used in both heading 8429 and in the statistical suffix for heading 8431, is stated in the *Webster's New World Dictionary, Third College Edition* (1988) as follows: "1. a power-driven excavating vehicle with a hinged bucket at the end of a long jointed arm: it digs by drawing the bucket toward the power unit. 2. the digging mechanism of this vehicle." *See* Def. Ex. 2. The *Webster's Dictionary* defines a backhoe as both an excavating vehicle and the mechanism on which the vehicle relies. *The Collins English Dictionary – Complete and Unabridged, 12th Edition* 2014 similarly defines "backhoe" as "1. (Civil Engineering) a mechanical excavator with an extension consisting of a bucket on an extending arm, which can be used to scoop up earth as it is drawn back towards the machine." *See* Def Ex. 3. According to the definitions cited above, an excavator is a machine that is used for digging or scooping soil, and a backhoe is a type of excavating machine that utilizes a jointed arm and bucket that digs by drawing the bucket backward toward the machine's superstructure. Here, the Bobcat mini-excavators are a type of excavator that fit the common meaning of the term "backhoe," as they are designed to scoop soil and other material by using a boom and arm to draw a bucket towards a machine with a 360 degree revolving superstructure. The Bobcat machine is thus classified under subheading 8429.52.10, and the counterweights are described in the statistical reporting number 8431.49.9044 as parts of backhoes.

Norca failed to set forth any lexicographic definition of the relevant subheading and statistical suffix term "excavator" or "backhoe." Instead, Norca appears to define the terms in its brief by stating that "[c]ommercially—and in common parlance—there is a distinction between an 'excavator' and a 'backhoe' such that the term 'backhoe' as used in statistical reporting number 8431.49.9044, HTSUS, does not include 'mini

excavators.'"  *See* Pl. Br. at 7.  Norca cites to "SOF 34" as support for this statement.

However, SOF 34 does not offer any lexicographic citations or definitions, but only

offers citations to excerpts of the testimony of Norca's own employee, Mr. Walters.  *See,*

*e.g.*, Ex. 8 (Walters Tr.) at 12:2-13:17, 23:11-25, 24:9-25:11.  A review of the cited

excerpts shows that Mr. Walters merely confirms the basic facts involving the functions

of the Bobcat mini-excavators, *i.e.* its ability to rotate in a 360 degree arc, and its method

of digging with a boom, arm and digging bucket.  Mr. Walters also makes a conclusory

statement that based on his own experience in "the industry" he would not consider

Bobcat mini-excavators to be a backhoe.  To the extent Norca argues for a commercial

designation different from the common meaning, Norca has not met the requisite criteria.

As the case *Timber Products Co. v. United States*, 462 F.Supp.2d 1342 (Ct. Int'l

Trade 2006) explains:

> In order to show that a commercial designation differs from a term's
> common meaning, the party proffering the commercial designation must
> show that the commercial use is 'general (extending over the entire
> country), definite (certain of understanding), and uniform (the same
> everywhere in the country)' S.*G.B. Steel Scaffolding & Shoring Co. v.*
> *United States,* 82 Cust. Ct. 197, 206 (1979), (*citing Moscahlades Bros.,*
> *Inc. v. United States*, 42 C.C.P.A. 78, 82 (1954)), as opposed to a meaning
> that is only partial, local or personal, *Maddock v. Magone*, 152 U.S. 368,
> 371–72, 14 S. Ct. 588, 38 L. Ed. 482 (1894) (further elaborating that were
> the meaning not general and known throughout the country, or only
> known in one branch of the trade, then different rates of duty would be
> assigned at different ports of entry), or 'occasional and inconsistent'
> *Hartog Foods Int'l Inc. v. United States*, 15 CIT 475, 482 (1991).

Here plaintiff cites to deposition excerpts of one witness, Mr. Walters (Pl. Ex. 8

(Walters Tr.)), that fail to provide any of his background or how his testimony would be

competent to cover all the regions in the United States.  *See Timber Products Co. v.*

*United States*, 462 F.Supp.2d 1342, 1353 (Ct. Int'l Trade 2006).

Further Norca cites to webpages which allegedly supports its claimed commercial understanding. Nevertheless, the use of the terms "backhoe" and "excavator" in the webpages cited do not establish a definite, uniform, and general use throughout the trade so as to support a commercial designation, nor is it sufficient to overcome the common meaning of such terms as used in the tariff schedule.

For example, in contradiction to its position, Norca cites to the John Deere, Inc. webpage, *see* Pl. Ex. 15 (NEP_00200), which controverts any uniform commercial designation of "excavator." The webpage states:

> Call it a trackhoe, digger, or excavator. We don't care. Just call your dealer to find the one that's right for you.

*See* Pl. Ex. 15 (NEP_00200). The term "trackhoe," however, is equated with "backhoe." The webpage of the Kilgore Companies, a group of construction materials companies with numerous locations throughout Nevada, Utah, Idaho, Wyoming and Colorado, describes one of its construction vehicles, *i.e.* a trackhoe, depicting a large excavating machine similar to the one at issue and states the following:

> WHAT IS A TRACK HOE?
> A track hoe, **also known as a backhoe**, is a type of excavator. It is one of the most commonly used pieces of equipment in outdoor construction jobs. The name track hoe comes because it uses rotating wheels similar to tanks used by the military.
> Track hoes come in different sizes, from mini-excavators to larger excavators that weigh several dozen tons. (emphasis added).

Def. Ex. 4 Kilgore Track Hoe webpage ("https://www.kilgorecompanies.com/operating-a-track-hoe/" visited by undersigned counsel and printed from the internet on Jan. 11, 2023); Def. Ex. 5 Kilgore "about us" and locations webpages ("https://www.kilgorecompanies.com/about-us [and] /locations" visited by undersigned counsel and printed from the internet on Jan. 21, 2023). In another example, Norca cites to certain

19

CASE Construction Equipment and Caterpillar Inc. webpages.  *See* Pl. Ex. 13

(NEP_00170); Pl. Ex. 14 (NEP_00186).  In those pages, however, the companies use the

term backhoe to refer to "backhoe loaders," which are distinct machines; specifically,

these machines are front-end shovel loaders with backhoe attachments in the rear.  But

that such machines are referred to with the term "backhoe," to identify loaders with a

backhoe attachment, is not inconsistent with the use of the term "backhoe" as applying to

excavators with a 360 degree revolving superstructure.

Furthermore, the book *Construction Engineering Design Calculations and Rules

of Thumb*, 2017, (Butterworth-Heinemann an imprint of Elsevier, Cambridge, MA) by

Ruwan Rajapakse at Section 5.6 entitled "Excavators," describes excavators and states

that excavators are also known as backhoes.  *See* Def. Ex 8 (Excerpt of book from

ScienceDirect website, "https://www.sciencedirect.com/topics/engineering/excavators"

visited by undersigned counsel and printed from the internet on Jan. 16, 2023).

Additionally, the National Institute for Occupational Safety and Health's (NIOSH) has an

article entitled, "Preventing Struck-by Fatalities Related to Excavator Quick Couplers,

Buckets and Attachments."  The NIOSH article states:

> Hydraulic excavators (Figure 1 and 2) are used in construction to move
> large quantities of earth.  **Many excavators have tracks for movement
> and are commonly called "trackhoes or backhoes"**.  An excavator
> quick coupling device (quick coupler) can save a lot of time on the job
> side, but when an excavator bucket unintentionally detaches from a quick
> coupler, worker fatalities can – and have- occurred. (emphasis added).

*See* Def. Ex. 6 NIOSH webpage (https://blogs.cdc.gov/niosh-science-blog/

2022/03/10/stuck-by-injuries/ visited by undersigned counsel and printed from the

internet on Jan. 16, 2023).

In addition, the webpage from Aero Rentals of Iowa City, Iowa, shows a "Kubota

K008 Mini Hoe."  *See* Def  Ex. 7 Aero Rental webpage ("https://www. aerorental.com
/equipment.asp? action=category&category=15&key=a%2EME008" visited by
undersigned counsel and printed from the internet on Jan. 16, 2023).  As the webpage
depicts, the Kubota K800 Mini Hoe is the same type of compact digging machine for
which the counterweights at issue here are part.  The name the rental agency uses for the
Kubota machine, *i.e.* "Mini-Hoe," alludes to the manner by which the machine digs, by
using a hinged bucket at the end of a long jointed arm and digging by drawing the bucket
toward the power unit, which is the definition of a backhoe.

    A "commercial designation" is not established when there is a conflict in the
evidence proffered to establish the commercial designation.  *Timber Products*, 462
F.Supp.2d at 1353, 1354.  In light of the above, Norca has failed to show a commercial
designation that is "general (extending over the entire country), definite (certain of
understanding), and uniform (the same everywhere in the country)" revealing a definition
of "backhoe" that is mutually exclusive of "excavator."  In sum, the terms "excavator"
and "backhoe" are not clearly delineated as commercial terms as advocated by Norca.

    Accordingly, the analysis of these terms should be controlled by the common
meaning as we have set forth above.[5]  By application of GRIs 1 (including Note 2(b) to

---

[5]  As discussed above, the analysis of the common meaning of "backhoe" and
"excavator" is supported by the terms of the tariff itself.  The corresponding tariff
wording for the five-digit subheading 8429.5, HTSUS, is "[m]echanical shovels,
excavators and shovel loaders." At the six-digit level for subheading 8429.52, the
corresponding tariff term is "[m]achinery with a 360 [degree] revolving superstructure."
Finally, at the eight-digit level, subheading 8429.52.10, the corresponding tariff term is
"[b]ackhoes, shovels, clamshells and draglines."  Therefore, subheading 8429.52.10
contemplates a machine that is a backhoe incorporating a 360 degree revolving
superstructure, *i.e.* a backhoe excavator.  In fact, the excavator machines on which the
counterweights at issue are a part were entered under subheading 8429.52.10, HTSUS

Section XVI[6]) and 6,[7] the counterweights are classified under heading 8431, HTSUS, and because the mini-excavator meets the common meaning of a "backhoe," the counterweights are specifically described by statistical reporting number 8431.49.9044, which provides for "Parts suitable for use solely or principally with the machinery of headings 8425 to 8430: Of machinery of heading 8426, 8429, or 8430: Other: Other: Other: Parts of backhoes, shovels, clamshells and draglines: Other: Other." Thus, since the mini-excavators of which the counterweights are a part, meets the definition of "backhoe," the counterweights fall within the scope of this provision as parts of backhoes.

---

(360 revolving superstructure-backhoes). *See* Pl. Ex. 1 at page 5 of 598 and Ex. 10 at page 531 of 598.

[6] Note 2 to Section XVI states:

> 2. Subject to note 1 to this section, note 1 to chapter 84 and to note 1 to chapter 85, parts of machines (not being parts of the articles of heading 8484, 8544, 8545, 8546 or 8547) are to be classified according to the following rules:
> (a) Parts which are goods included in any of the headings of chapter 84 or 85 (other than headings 8409, 8431, 8448, 8466, 8473, 8487, 8503, 8522, 8529, 8538 and 8548) are in all cases to be classified in their respective headings;
> (b) Other parts, if suitable for use solely or principally with a particular kind of machine, or with a number of machines of the same heading (including a machine of heading 8479 or 8543) **are to be classified with the machines of that kind or in heading** 8409, **8431**, 8448, 8466, 8473, 8503, 8522, 8529 or 8538 **as appropriate**. However, parts which are equally suitable for use principally with the goods of headings 8517 and 8525 to 8528 are to be classified in heading 8517 (emphasis added).

[7] GRI 6 states that "[f]or legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related Subheading Notes and, *mutatis mutandis*, to the above Rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this Rule the relative Section and Chapter Notes also apply, unless the context otherwise requires."

Additionally, because the counterweights at issue fall under statistical reporting number 8431.49.9044, the merchandise is not covered by the terms of the exclusion found in U.S. Note 20(q)(90). That note covers counterweights for use on excavators and wheel loaders "described in statistical reporting number 8431.49.9095." Because the counterweights at issue are not "described" in such statistical reporting number, but are rather described in statistical reporting number 8431.49.9044, the merchandise is not covered by the exclusion found in U.S. Note 20(q)(90).

## III.   NORCA'S UNSUPPORTED TREATMENT CLAIM IS UNFOUNDED

Norca contends that its merchandise should be encompassed by statistical reporting number 8431.49.9095, which provides for "Other; Other; Other; Other." Specifically, Norca alleges that Customs somehow violated 19 U.S.C. § 1625(c)(2) in issuing HQ H308870 because it modified a treatment accorded to substantially identical transactions. This argument is not supported by the law or the undisputed facts.

Norca cannot point to any treatment that was given to the importation of its counterweights that changed with the issuance of the underlying HQ ruling, HQ H308870, in 2020. Instead, Norca contends that in a 2019 ruling, N304078, issued to BNSF Logistics on behalf of Mitchell Industrial Tire Co., CBP determined that rubber tracks for machines, including excavators, were eligible for an exclusion from the Section 301 duties granted by the United States Trade Representative (USTR) under U.S. Note 20(i)(17) to Chapter 99, HTSUS. *See* Pl. Br. at 8 (citing U.S. Note 20(i)(17), Subchapter III, Ch. 99, HTSUS ("Vulcanized rubber tracks, each incorporating cords and cleats of steel, designed for use on construction equipment (described in statistical reporting number 8431.49.9095).")). Norca contends that "CBP's decision here [the underlying

23

Headquarters Ruling H308870] had the effect of modifying treatment previously accorded parts for excavators, and there is nothing in the record demonstrating that CBP complied with its notice and comment obligations" and that "CBP's classification decision accordingly violates 19 U.S.C. § 1625(c)(2)." Pl. Br. at 8–9.

The applicable standard for analyzing a treatment claim necessarily begins with the language of the statute, 19 U.S.C. § 1625(c), which provides, in relevant part, that:

> A proposed interpretive ruling or decision which would –
>
> *     *     *
>
> (2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions; shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c)(2).

Courts have identified four elements that must be established in making a treatment claim.  First, there must be "a treatment previously accorded" by CBP.  *Kent International, Inc. v. United States*, 264 F. Supp. 3d 1340, 1346 (Ct. Int'l Trade 2017) (*quoting Kahrs Int'l, Inc. v. United States*, 645 F. Supp. 2d 1251, 1286 (Ct. Int'l Trade 2009)).  That is, plaintiff must show "what specific entries of the subject merchandise were previously classified under the desired tariff provision." *Kent International*, 264 F. Supp. 3d at 1346.  Second, the entries in question must be "substantially identical transaction[s] to the previous treatment." *Id*.  Third, CBP must have "made a proposed interpretive ruling or decision that would have the effect of modifying the previous treatment with respect to the entries in question." *Id*. (internal quotation marks omitted).

24

Finally, plaintiff must establish that "the proposed interpretive ruling or decision violated the notice and comment requirements of this statute." *Id.*; *see also Motorola, Inc. v. United States*, 462 F. Supp. 2d 1367, 1372 (Ct. Int'l Trade 2006) (*Motorola III*).  Norca fails to satisfy any requirements of the standard.

As to the first element – the existence of a "treatment previously accorded by Customs" – CBP defines the term "treatment" in its regulations as follows:

(i)      There must be evidence to establish that:

A. There was an actual determination by a Customs officer regarding the facts and issues involved in the claimed treatment;

B. The Customs officer making the actual determination was responsible for the subject matter on which the determination was made; and

C. Over a 2-year period immediately preceding the claim of treatment, Customs consistently applied that determination on a national basis as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of that person's Customs transactions involving materially identical facts and issues.

19 C.F.R. § 177.12(c)(1)(i); *see Kent International, Inc. v. United States*, 264 F. Supp. 3d at 1346.  The regulation further provides that:

(ii)     [t]he determination of whether the requisite treatment occurred will be made on a case by case basis and will involve an assessment of all relevant factors.  In particular, Customs will focus on the past transactions to determine whether there was an examination of the merchandise (where applicable) by Customs or the extent to which those transactions were otherwise reviewed by Customs to determine the proper application of the Customs laws and regulations.

*Id.*  "[T]he evidentiary burden lies on the party seeking to establish the existence of a treatment."  *Kahrs Intern.*, 645 F. Supp. 2d at 1355 (citing 19 C.F.R. 177.12 (c)(i)(v)).

Here, there was no treatment accorded to Norca's importations of counterweights that was relied upon for two years and subsequently modified by the HQ ruling. Norca's mention of a violation of § 1625(c)(2) at page 8 and 9 of its moving brief is the only discussion in its brief of "treatment" and it is otherwise devoid of any assertions of the elements of a "claim of treatment" such as when the treatment arose or the transactions which encompass its "claim of treatment" required by 19 C.F.R. § 177.12(c)(1)(i).  As to the third element, while we do not challenge plaintiff's assertion that the underlying Headquarters Ruling at issue, HQ H308870 is an interpretive ruling, that ruling did not "have the effect of modifying" a previous treatment, because, as shown above, no such treatment existed.  *See* 19 U.S.C. § 1625(c)(2).  Finally, because there was no "treatment previously accorded" with respect to Norca's own imports, there was no violation of the notice and comment procedures of section 1625(c). *Id*.

Norca seemingly makes the argument that it satisfies the elements of a § 1625(c)(2) "treatment" claim based on the treatment of merchandise of another importer (Mitchell Industrial Tire Co).  *See* Pl. Br. at 8, 9.  Specifically, Norca asserts that "In its 2019 ruling [ruling N304078 issued to Mitchell Industrial Tire Co], CBP determined that rubber tracks for excavators were eligible for an exclusion from the China 301 Tariff granted by USTR under Note 20(i)(17) ("Vulcanized rubber tracks, each incorporating cords and cleats of steel, designed for use on construction equipment (described in statistical reporting number 8431.49.9095)")."  *See id*.

First, treatment denotes consistent "pattern of actions by Customs involving . . . a sufficient degree of examination and review for classification purposes."  *Motorola III*, 462 F. Supp. 2d at 1381; *see Peerless Clothing*, 602 F. Supp. 2d at 1318; *see also* 19

C.F.R. § 177.12(c)(1)(i); *see also Motorola, Inc. v. United States* (*Motorola IV*), 509 F.3d 1368, 1371-72 (Fed. Cir. 2007).  As the decisions in the *Motorola* line of cases make clear, rulings (even those covering substantially identical merchandise) are not considered when conducting a 19 U.S.C § 1625(c)(2) treatment analysis.  *See Motorola III*, 462 F. Supp. 2d at 1379-82; *Motorola IV*, 509 F.3d at 1372.

The facts in the *Motorola* cases are instructive.  CBP issued to Motorola two pre-classification rulings (PRLs) related to the classification of certain circuits.  *Motorola III*, 462 F. Supp. 2d at 1371; *Motorola IV*, 509 F.3d 1369.  Motorola first claimed that CBP violated 19 U.S.C. § 1625(c)(1) when it issued a later ruling letter classifying substantially identical merchandise in another subheading.  This Court disagreed, holding that PRLs are limited to only the exact merchandise identified and CBP did not violate the notice and comment requirements of section 1625(c)(1) when it issued the new ruling letter.  *Motorola, Inc. v. United States*, 350 F. Supp. 2d 1057, 1068 (Ct. Int'l Trade 2004) (*Motorola I*).  The Court later analyzed whether the PRLs could, themselves, establish a section 1625(c)(2) treatment claim.  *Motorola III*, 462 F. Supp. 2d at 1379-82; *Motorola IV*, 509 F.3d 1372.  The Court determined that they could not.  "[P]rior interpretive rulings are governed by [section 1625(c)(1)]," and they "bind Customs 'only with respect to'" the exact merchandise (not substantially identical merchandise).  *Motorola IV*, 509 F.3d at 1372 (quoting *Motorola I*, 350 F. Supp. 2d at 1068).  The Federal Circuit concluded that allowing a PRL that cannot support a (c)(1) claim (because the merchandise was not identical) to support a (c)(2) treatment claim (which considers actions taken with respect to substantially identical merchandise) "would create a fictitious catchall in subsection (c)(2), thereby gutting the strict identity requirement of

the PRL system and rendering subsection (c)(1) superfluous." *Motorola IV*, 509 F.3d at 1372 (citing 19 C.F.R. § 177.9(b)(2)).  Rulings, and the revocation thereof, are "governed by (c)(1) and therefore [are] not within [a] (c)(2)" treatment claim.  *Motorola III*, 462 F. Supp. 2d at 1381.  The third-party rulings, therefore, cannot be considered as supporting material for Norca's section 1625(c)(2) claim.

Again, only CBP actions with respect to specific entries are considered in support of a claim of treatment and plaintiff has offered no evidence of any actions taken by Customs with respect to its own entries or third-party entries supporting a treatment claim.  *See Motorola III*, 462 F. Supp. 2d at 1381; *Peerless Clothing*, 602 F. Supp. 2d at 1318; *see also* 19 C.F.R. § 177.12(c)(1)(i); *Motorola IV*, 509 F.3d at 1371-72.  The types of actions analyzed are, according to regulation, "liquidations of entries or reconciliations or other Customs actions."  19 C.F.R. § 177.12(c)(1)(i) (emphasis added).  As this Court in both *Kahrs* and *Kent* specified, to support a treatment claim, plaintiff must identify "what specific entries [of the merchandise]. . .were previously classified under the desired tariff subheading."  *Kahrs*, 645 F. Supp. 2d at 1286; *Kent II*, 264 F. Supp. 3d at 1346.  There is no reference in Norca's brief, to any specific entries of substantially identical third-party excavator parts entries that were liquidated pursuant to the statistical reporting number 8431.49.9095.  *See* Pl. Br. at 8, 9.  These failures are fatal to Norca's claim that a treatment existed as to the reporting of the excavator counterweights pursuant to statistical suffix 8431.49.9095 – a treatment that plaintiff incorrectly contends was not extended to its imports.

Finally, Norca cannot establish that the third-party entries were, in fact, substantially identical transactions.  While we acknowledge that the merchandise that is

described in the third-party ruling, N304078, comprise rubber tracks used to propel machines such as excavators, loaders, crawlers, pavers, trenchers and other excavating machines, those findings are simply insufficient to determine if the transaction is substantially identical.  The transactions at issue here, which were the subject of the underlying ruling, HQ H308870 involve counterweights which were designed for specific mini-excavators, *i.e.*, excavators that were classified pursuant to subheading 8429.52.10 HTSUS ("Mechanical shovels, excavators and shovel loaders: Machinery with a 360˚ revolving superstructure: Backhoes, shovels, clamshells and draglines").  A determination involving statistical suffix 44 against 95 takes into consideration the specific type of machines to which the imports are part, *i.e.*, the wording of statistical suffix (8431.49.9044) consists of the following: "Of machinery of heading 8426, 8429 or 8430:, Other:, Other:, Other:, Parts of backhoes, shovels, clamshells, and draglines: Other, Other."  The transactions underlying the third-party ruling, N304078, does not reflect that the transactions involved parts (rubber tracks) dedicated specifically to excavators of heading 8429, and even more specifically to parts of backhoes, shovels, clamshells, and (or) draglines, as in HQ H308870.  Instead ruling N304078 involved a transaction where rubber tracks are "used to propel machines such as excavators, loaders, crawlers, pavers, trenchers and other excavating machines."  This broader group of machines, to which the "parts" were at issue in N304078, demonstrate that the transactions at issue in N304078 are not substantially similar to the transactions in HQ H308870.  It is not apparent that the vulcanized rubber tracks at issue in N304078 were dedicated to a specific subset of machines *i.e.*, "backhoes, shovels, clamshells, and draglines" like the subject backhoe counterweights at issue in this litigation.  Further, had

29

the "[v]ulcanized rubber tracks, each incorporating cords and cleats of steel, designed for use on construction equipment" at issue in N304078 been dedicated to a specific subset of machines *i.e.*, "backhoes, shovels, clamshells, and draglines" (of statistical suffix 8431.49.9044), query if the exclusion set forth in U.S. Note 20(n)(44) "Excavator crawler shoes (described in statistical reporting number 8431.49.9044)" would have applied.

As shown above, Norca has failed to set forth sufficient evidence that there existed a treatment, pursuant to 19 U.S.C. § 1625(c)(2), involving the merchandise at issue, nor does it show any evidence of substantially identical merchandise or treatment of substantially identical treatment, and its claim, therefore, must be rejected.

## IV.   DEFENDANT AGREES WITH NORCA THAT ITS BACKHOE COUNTERWEIGHTS WEIGHING MORE THAN 400 KG BUT LESS THAN 600 KG ARE ELIGIBLE FOR THE EXCLUSION IN U.S. NOTE 20(N)(43)

The portion of the merchandise at issue that weighs more than 400 kg but not more than 600 kg is classifiable under subheading 9903.88.11, HTSUS, and qualifies for the exclusion for backhoe counterweights set forth in Note 20(n)(43).[8]  U.S. Note 20(n)(43) provides an exclusion from Section 301 duties for "[b]ackhoe counterweights each weighing more than 400 kg but not more than 600 kg (described in statistical reporting number 8431.49.9044)."  As the portion of the counterweights at issue that weigh more than 400 kg but not more than 600 kg qualify for U.S. Note 20(n)(43), that portion is eligible for a refund of Section 301 duties.  Based upon the evidence produced

---

[8] It is significant to mention that another note in U.S. Note 20(n), *i.e.* U.S. Note 20(n)(44), provides for an exclusion from 301 duties for "[e]xcavator crawler shoes (described in statistical reporting number 8431.49.9044)."  While this note does not involve that merchandise, the note is consistent with and supports our interpretation that the term "backhoe" in the ten-digit statistical suffix 8431.49.9044 encompasses tracked excavator machines.

during discovery in this case, we agree that the following models of backhoe counterweights meet the weight criteria of U.S. Note 20(n)(43): 7172448, 7228249, 7251832, 7331809, 7354316 and 7415671.

## **CONCLUSION**

For the above reasons, we respectfully request that this Court enter an Order (1) denying plaintiff's motion for summary judgment; (2) granting our cross-motion for summary judgment finding that the merchandise at issue is properly reported under the ten-digit statistical reporting number 8431.49.9044, HTSUS and for the portion of the merchandise at issue that weighs more than 400 kg but not more than 600 kg, that portion is also classifiable under subheading 9903.88.11 HTSUS and qualifies for the exclusion set forth in Note 20(n)(43); and (3) dismissing this action in its entirety.

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-9230 or 0480
Attorneys for Defendant

</div>

Of Counsel
Mathias Rabinovitch, Esq.
*Office of the Assistant Chief Counsel*
International Trade Litigation
U.S. Customs and Border Protection

Dated: January 23, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Edward F. Kenny, a Senior Trial Counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Brach, International Trade Field Office, who is responsible for the Government's memorandum in opposition to plaintiff's motion for summary judgment and in support of defendant's cross-motion for summary judgment, dated January 23, 2023, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 8,562 words.

<u>/s/ Edward F. Kenny</u>

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. JANE A. RESTANI, JUDGE
_____
NORCA ENGINEERED PRODUCTS LLC,      :
                                           :
                                           :
                         Plaintiff,     :          Court No.  21-00305
                                           :
                    v.                :
                                           :
UNITED STATES,                           :
                                           :
                      Defendant.    :
_____:

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56.3 of the Rules of the United States Court of International Trade, motions for summary judgment must include a separate statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  In this case, we agree with a number of Plaintiff's Statements of Material Fact and do not restate them here.  With respect to Defendant's Cross-Motion for Summary Judgment only, there are no material facts as to which there exists a genuine issue to be tried and the issues are amenable to resolution through dispositive motions.  The additional pertinent undisputed facts of this case are as follows:

1.   The twenty-five counterweight models at issue have the following unique Bobcat Part Numbers: 7171788, 7172448, 7172453, 7183302, 7222067, 7222068, 7228249, 7240291, 7251831, 7251832, 7251833, 7284786, 7286644, 7302559, 7307032, 7330614, 7331809, 7331812, 7331815, 7343686, 7353363, 7354316, 7357073, 7415671, 7415674. *See* Table of Models and Weights on page 2 and 3 of Norca's moving brief[1]; Pl. Ex. 2, 3 and 10.

---

[1] Plaintiff's counsel agreed pursuant to an email dated Jan. 19, 2023, that the tables of models and weights on page 2 and 3 of Norca's moving brief (which plaintiff supported by citing to Pl Ex. 10 (SOF 5) do not need to be redacted, *i.e.* plaintiff no longer considers that information confidential.

2.  Six of the twenty-five counterweight models that have weights between 400 kilograms and 600 kilograms, namely Part Numbers 7172448, 7228249, 7251832, 7331809, 7354316 and 7415671.  *See* Table of Models and Weights on page 2 and 3 of Norca's moving brief; Pl. 2, 3, and 10.

3.  The twenty-five counterweights are designed for and exclusively used on certain models of Bobcat mini-excavators.  *See* Ex. 7 (Pollan Tr.) at 12:10-15; Ex. 8 (Walters Tr.) at 9:4-11; Ex. 2 at 14 of 598.

4.  The Bobcat mini-excavators for which the counterweights at issue are a part, are equipped with a boom, arm (stick), digging bucket, and a tracked crawler base upon which the superstructure rotates in a 360 degree arc.  *See* Ex. 8 (Walters Tr.) at 12 and 13.; photo of representative Bobcat mini-excavator on page 2 of Norca's moving brief.

5.  The Bobcat mini-excavators for which the counterweights at issue are a part, dig by drawing the bucket toward the machines' superstructure. *See* Ex. 8 (Walters Tr.) at 12 and 13 and 23; photo of representative Bobcat mini-excavator on page 2 of Norca's moving brief.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel
Civil Division, Dept. of Justice
Of Counsel                                    Commercial Litigation Branch
Mathias Rabinovitch, Esq.                     26 Federal Plaza, Room 346
Office of the Assistant Chief Counsel         New York, New York 10278
International Trade Litigation                 Tel. No. (212) 264-9230 or 0480
U.S. Customs and Border Protection            Attorneys for Defendant

Dated: January 23, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. JANE A. RESTANI, JUDGE
_____

| | | |
|---|---|---|
| NORCA ENGINEERED PRODUCTS LLC, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No.  21-00305 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____ :

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT
OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade,

defendant United States (Government) responds to plaintiff's, Norca Engineered Products LLC's

(Norca), Statement of Undisputed Material Facts (SUMF), dated November 3, 2022, as follows:[1]

**PRELIMINARY STATEMENT**

Pursuant to USCIT Rule 56.3, motions for summary judgment must include a separate

statement of the material facts as to which the moving party contends there is no genuine issue to

be tried.  The statement must be "short and concise" and limited to "material facts."  USCIT

Rule 56.3.  We object to Norca's statement on the following bases: (1) several of the statements

are not short or concise, but rather comprise multiple issues; (2) several of the statements are not

limited to material facts, but also contain opinion, commentary, argumentation, and statements of

law; and (3) several statements do not accurately reflect the cited authority.  Notwithstanding,

and without waiving these objections, we respond to Norca's Rule 56.3 statement below.

Although we deny or object to several of Norca's statements, none of our responses gives rise to a disputed material fact that would preclude the Court from considering or granting the Government's cross-motion for summary judgment.

**RESPONSES**

**P-1**.  The subject merchandise is grey cast iron counterweights of various weights imported from China. (Ex. 9 at NEP_00001; see also Ex. 2 (Protest No. 3901-19-104467), ECF No. 10-1 at p. 48 of 70.)

**US-1.**  Admits.

**P-2**.  The counterweights are installed on different models of the Doosan Bobcat mini or compact excavators. (Ex. 7 (Pollan Tr.) at 12:10-15; Ex. 8 (Walters Tr.) at 9:4-11; Ex. 2, ECF No. 10-1 at p. 48 of 70.)

**US-2.**  Admits.

**P-3.**  These models include the Bobcat E32, E35, E42, E45, E50, E60, E85, and E88. (Ex. 10 at NEP_00081; Ex. 12 at NEP_00145-NEP_00152.)

**US-3.**  Admits

**P-4.**  The counterweights, as shown in the below example, attach to the lower aft portion of the machine to balance the weight and prevent the excavator from tipping over.

---

[1] For the convenience of the Court, each of plaintiff's statements are included, followed by our response.  For example, P-1 reflects plaintiff's first statement, and US-1 reflects our response. For clarity, when citing to exhibits we will refer to both parties' exhibit number.



(Ex. 7 (Pollan Tr.) at 68:3-18; Ex. 2, ECF No. 10-1 at p. 22 of 70 and p. 48 of 70.)

**US-4.** Admits.

**P-5.** The following table[2] provides a cross-reference of the counterweight part number (as identified on the entry documents) and weight (in pounds and in kilograms).

| Counterweight Part No. | Weight (lb) | Weight (kg)* | Counterweight Part No. | Weight (lb) | Weight (kg)* |
|---|---|---|---|---|---|
| 7171788 | 650.2 | 294.9 | 7302559 | 2932 | 1329.9 |
| 7172448 | 1219.7 | 553.2 | 7307032 | 407 | 184.6 |
| 7172453 | 3938.8 | 1786.6 | 7330614 | 3130 | 1419.7 |
| 7183302 | 2127.7 | 965.1 | 7331809 | 1129 | 512.1 |
| 7222067 | 694.7 | 315.1 | 7331812 | 1682 | 762.9 |
| 7222068 | 2082 | 944.4 | 7331815 | 2145 | 973.0 |
| 7228249 | 1169 | 530.2 | 7343686 | 441 | 200.0 |
| 7240291 | 443.1 | 201.0 | 7353363 | 528 | 239.5 |
| 7251831 | 1645 | 746.2 | 7354316 | 1070.5 | 485.6 |
| 7251832 | 992 | 450.0 | 7357073 | 2090 | 948.0 |
| 7251833 | 807 | 366.0 | 7415671 | 968 | 439.1 |
| 7284786 | 287.2 | 130.3 | 7415674 | 1645 | 746.2 |
| 7286644 | 642 | 291.2 | *Note: 1 lb = 0.4535924  kg* | | |

(Ex. 10 at NEP_00004.)

**US-5.** Admits.

---

[2] Plaintiff's counsel agreed pursuant to an emails dated Jan. 19, 2023 and Jan. 23, 2023, that the redactions in Plaintiff's SOF at ¶¶ nos. 5, 6, 7, 15 and 43 (all of the redactions in Pltf's Statement

**P-6.** On May 29, 2019, Plaintiff received a CF-29 from CBP in connection with Entry No. 525-0941130-3, notifying Plaintiff "of what appears to be an HTS misclassification." (Ex. 2, ECF No. 10-1 at p. 13 of 70.)

**US-6.** Admits.

**P-7.** On June 4, 2019, CBP directed Plaintiff to classify the counterweights under statistical reporting number 8431.49.9044, HTSUS. (Id. at p. 11 of 70)

**US-7.** Admits.

**P-8**. The duty rate applicable to 8431.49.9044, HTSUS is identical to that for 8431.49.9095, HTSUS: Free. (Ex. 1, compare statistical reporting number 8431.49.9044 with statistical reporting number 8431.49.9095.)

**US-8** Objection. This statement comprises an assertion of law and not of fact. To the extent this statement is determined to be an issue of fact, admits.

**P-9.** On June 18, 2018, USTR, following an investigation under Section 301 of the Trade Act of 1974, imposed a 25 percent ad valorem duty on certain products of China. (Notice of Action & Request for Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 28710 (USTR June 20, 2018).)

**US-9.** Admits.

**P-10.** Subject to the 301 Tariff that USTR imposed under heading 9903.88.01 ("List 1") were all products of China classified in the subheadings enumerated in U.S. note 20(b). (Id. at 28713 (Annex A).)

---

of Undisputed Material Facts) are no longer considered confidential and do not need to be redacted.

**US-10.** This statement comprises an assertion of law and not of fact. To the extent this statement is determined to be an issue of fact, admits.

**P-11**. List 1 specifically included subheading 8431.49.90. (Id. at 28714.)

**US-11.** Admits.

**P-12.** Following the 301 Tariff action, USTR granted exclusions to the List 1 tariffs. (Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 49564, 49565 (USTR Sept. 20, 2019).)

**U.S.-12.** Admits that USTR granted exclusions to the List 1 tariffs to the extent set forth in 84 Fed. Reg. 49564, 49565 (USTR Sept. 20, 2019), and denies that exclusions were granted to all the List 1 tariffs. *See Id.*

**P-13.** On September 20, 2019, USTR added subheading 9903.88.14. USTR, which excluded from the List 1 tariffs "Articles the product of China, as provided for in U.S. note 20(q) to this subchapter, each covered by an exclusion granted by the U.S. Trade Representative." (Id. at 49566 (Annex).)

**US-13**. Admits.

**P-14**. Paragraph (90) to U.S. note 20(q) excludes "Counterweight castings of iron or steel designed for use on excavators and wheel loaders (described in statistical reporting number 8431.49.9095)." (Id. at 49574.)

**US-14.** Admits.

**P-15.** CBP liquidated Entry No. 525-0941130-3 on June 14, 2019 under statistical reporting number 8431.49.9044, HTSUS and under subheading 9903.88.01. (Ex. 2, ECF No. 10-1 at p. 4 of 70.)

**US-15.**  Admits.

**P-16.**  On December 11, 2019, Plaintiff timely protested CBP's classifications and
liquidation (Protest No. 3901-19-104467). (Id.).

**US-16.**  Admits.

**P-17.**  Between December 11, 2019, and December 22, 2020, Plaintiff timely filed
fifteen protests against CBP's classification and liquidation of entries of counterweights
(collectively, the "Protests"). (See Ex. 3.)

**US-17.**  Admits.

 **P-18.**  In the Protests, Plaintiff argued to CBP that the counterweights are properly
classified under 8431.49.9095, HTSUS. (See, e.g., Ex. 2, ECF No. 10-1 at p. 5 of 70.)

**US-18**.  Admits the allegation is a statement of plaintiff's claims made in its protests, but denies
as to their validity.

**P-19.**  Plaintiff further argued in its Protests that the merchandise should be classified
under 9903.88.14—and thus not subject to the List 1 301 Tariff—as the counterweights
satisfy the 301 Tariff exclusion for "Counterweight castings of iron or steel designed for use
on excavators and wheel loaders (described in statistical reporting number 8431.49.9095)."
(Id.)

**US-19**.  Admits the allegation is a statement of plaintiff's claims made in its protests, but denies
as to their validity.

**P-20**.  CBP denied the Protests on January 4, 2021 and January 12, 2021 based solely
on Customs Ruling HQ H308870 ("Norca Ruling"). (Ex. 2; Ex. 3.)

**US-20.**  Admits.

**P-21**.  In its Ruling, Customs held the counterweights "are classified under . . . and
6

specifically described by statistical reporting number 8431.49.9044, HTSUS." (Ex. 4 at pp. 4-5.)

**US-21**.  Objection, the ruling speaks for itself and is the best evidence of its contents. Notwithstanding and without waiving our objection, admits to the extent supported by the ruling, otherwise denies.

**P-22.**  Customs further held that the counterweights fall outside the scope of U.S. Note 20(q)(90) under subheading 9903.88.14, HTSUS—i.e., "Counterweight castings of iron or steel designed for use on excavators and wheel loaders (described in statistical reporting number 8431.49.9095)"—"because they are not described by statistical reporting number 8431.49.9095, HTSUS." (Id. at p. 5.)

**US-22.**  Objection, the ruling speaks for itself and is the best evidence of its contents. Notwithstanding and without waiving our objection, admits to the extent supported by the ruling, otherwise denies.

 **P-23**.  Customs directed classification of the counterweights under subheading 9903.88.01, HTSUS, thus rendering them subject to the additional 25 percent ad valorem duty assessment under the Section 301 Trade Remedy. (Id.)

**US-23**.  Objection, the ruling speaks for itself and is the best evidence of its contents. Notwithstanding and without waiving our objection, admits to the extent supported by the ruling, otherwise denies.

**P-24.**  On March 30, 2021, Plaintiff filed a request with CBP asking that CBP void its denial of the protests under 19 U.S.C. § 1515(d). (ECF No. 7, Complaint at ¶8; ECF No. 11, Answer at ¶8.)

**US-24.**  Admits.

**P-25.**  In its request, Plaintiff argued that even if CBP continued classifying the subject counterweights under 8431.49.9044, HTSUS, CBP nevertheless should vacate the denials, in part, based on the Note 20(n)(43) exclusion from the 301 Tariff that USTR granted. (ECF No. 7, Complaint at ¶8; ECF No. 11, Answer at ¶8.)

**US-25.**  Admits.

**P-26.**  CBP denied Plaintiff's request to vacate on April 5, 2021. (ECF No. 7, Complaint at ¶9; ECF No. 11, Answer at ¶9.)

**US-26.**  Admits.

**P-27.**  Plaintiff timely filed its Summons commencing this action. (ECF No. 1, Summons; see also ECF No. 7, Complaint at ¶4; ECF No. 11, Answer at ¶4

**US-27.**  Admits.

**P-28.**  The excavators onto which the imported counterweights are installed are classified under heading 8429, HTSUS, which covers "Self-propelled bulldozers, angledozers, graders, levelers, scrapers, mechanical shovels, excavators, shovel loaders, tamping machines and road rollers." (Ex. 1, HTSUS, Heading 8429; see also Ex. 4 at p. 4.)

**US-28.**  Admits that the excavators onto which the imported counterweights are installed are classified under subheading 8429.52.10 HTSUS which covers "Self-propelled bulldozers, angledozers, graders, levelers, scrapers, mechanical shovels, excavators, shovel loaders, tamping machines and road rollers: Mechanical shovels, excavators and shovel loaders: 8429.52 Machinery with a 360° revolving superstructure: Backhoes, shovels, clamshells and draglines." *See* Pl. Ex. 1 at page 5 of 598 and Ex. 10 at page 531 of 598.

**P-29.** The counterweights Norca imported are classified under Heading 8431, HTSUS, which covers "Parts suitable for use solely or principally with the machinery of headings 8425 to 8430." (Ex. 1, HTSUS, Heading 8431; see also Ex. 4 at p. 4.)

**US-29.** Admits.

**P-30.** The counterweights are classified in subheading 8431.49.90, which covers "Parts suitable for use solely or principally with the machinery of headings 8425 to 8430: Of machinery of heading 8426, 8429 or 8430: Other: Other: Other." (Ex. 1, HTSUS, Heading 8431; see also Ex. 4 at p. 4.)

**US-30.** Admits.

**P-31.** The present dispute revolves around classification of the counterweights under the ten-digit statistical suffixes. (Ex. 4 at p. 4.)

**US-31.** Admits that it is a dispute involving the ten-digit statistical suffix but denies that it involves classification *per se*. Classification of merchandise is not determined by statistical suffixes, which are not part of the legal text of the HTSUS. *See Pillowtex Corp. v. United States*, 171 F.3d 1370, 1374 (Fed. Cir. 1999).

**P-32.** CBP contends that the appropriate statistical reporting number is 8431.49.9044, which covers "Parts suitable for use solely or principally with the machinery of headings 8425 to 8430: Of machinery of heading 8426, 8429 or 8430: Other: Other: Other: Parts of backhoes, shovels, clamshells and draglines: Other: Other." (Id. at p. 4; see also Ex. 1, HTSUS, Heading 8431.)

**US-32.** Admits.

**P-33** Norca contends that the appropriate statistical reporting number is 8431.49.9095, which covers "Parts suitable for use solely or principally with the machinery of headings 8425 to 8430: Of machinery of heading 8426, 8429 or 8430: Other: Other: Other:

9

Other: Other: Other: Other." (Ex. 4 at p. 4; see also Ex. 1, HTSUS, Heading 8431.)

**US-33**  Admits the allegation is a statement of plaintiff's claims made in its protests and

complaint, but denies as to their validity.  *See* Pl. Ex. 4 (HQ H308870); ECF No. 7, Complaint.

**P-34.**  There is a commercial understanding and usage distinguishing an "excavator"

from a "backhoe." (See, e.g., Ex. 8 (Walters Tr.) at 12:2-13:17, 23:11-25, 24:9-25:11.)

**US-34.**  Objection.  This statement is not supported by the cited evidence.  To the extent a

response is required, denies.  Pl. Ex. 15 (Bates No. NEP_00200); Def. Exs. 4, 5, 6, 7 and 8.   A

review of the cited excerpts shows that Mr. Walters merely confirms the basic facts involving the

functions of the Bobcat mini-excavators, *i.e.* its ability to rotate in a 360 degree arc, and its

method of digging with a boom, arm and digging bucket, as well as makes a conclusory

statement that he would not consider Bobcat mini-excavators to be a backhoe.  Additionally, the

cited excerpts do not establish Mr. Walters as competent to testify to a commercial designation

that is definite, uniform, and general throughout the trade in the United States.  *See Timber*

*Products Co. v. United States*, 462 F.Supp.2d 1342 (Ct. Int'l Trade 2006) (setting forth the

standard for commercial designation).

**P-35**. This distinction between a backhoe and excavator is borne out in the marketing literature

of heavy machine manufacturers—e.g., Caterpillar, CASE Construction Equipment, and John

Deere—and United Rentals, a nationwide renter of industrial and construction equipment, all of

which distinguish backhoes and excavators as distinct equipment.




**Backhoe Loaders**

**Excavators**

https://www.cat.com/en_GB/products/new/equipment.html




*BACKHOE LOADERS*

*EXCAVATORS*

https://www.casece.com/northamerica/en-us/products



https://www.deere.com/en/construction/

11



https://www.unitedrentals.com/marketplace/equipment#/

(Ex. 13 at NEP_00170, NEP_00177-NEP_00179, NEP_00181-NEP_00184; Ex. 14 at

NEP_00186-NEP_00188, NEP_00189-NEP_00192, NEP_00193-NEP_00196; Ex. 15 at

NEP_00197-NEP_00198, NEP_00200, NEP_00203; Ex. 16 at NEP_00207-NEP_00208,

NEP_00209-NEP_00211.)

**US-35.**  Defendant objects to plaintiff's statement as vague as plaintiff has failed to explain what

"distinction" between a backhoe and excavator is borne out in the marketing literature.

Defendant further objects to plaintiff's statement as it does not accurately reflect the cited

authority.  Defendant avers that 2 of the 3 cited photographs with captions show a comparison

between a "backhoe loader" and an "excavator."  "Backhoe loaders," are distinct machines;

specifically, these machines are front-end shovel loaders with backhoe attachments in the rear.

That such machines are referred to with the term "backhoe," to identify loaders with a backhoe

attachment, is not inconsistent with the use of the term "backhoe" as applying to excavators with

a 360 degree revolving superstructure.  *See* Def. Exs. 4, 5, 6, 7 and 8 (supporting the position that

"excavators" are also called "backhoes").  Notwithstanding and without waiving our objection,

defendant denies that there is any material difference between an excavator and a backhoe for the purposes of classification of the subject merchandise or reporting in the statistical suffix. *See* Def. Exs. 1, 2, and 3, dictionary definitions of "excavate" and "backhoe."

**P-36.**  In Ruling N301699, CBP determined that a "Splined Front Idler Assembly used on a shovel loader," which "consists of three major pieces, the blocks, a shaft and a roller body," and is used "to maintain the tension in the track shoes while the shovel is moving" is properly classifiable under statistical reporting number 8431.49.9095, HTSUS. (Ex. 5, Ruling N301699 at p. 1.)

**US-36.**  Objection, the ruling speaks for itself and is the best evidence of its contents. Notwithstanding and without waiving our objection, admits to the extent supported by the ruling.

**P-37.** In April 2019, Mitchell Industrial Tire Co. sought a classification ruling from CBP on "rubber tracks used to propel machines such as excavators, loaders, crawlers, pavers, trenchers and other excavating machines." (Ex. 6, Ruling N304078 at p. 1.)

**US-37.**  Admits.

**P-38**.  On May 10, 2019, CBP ruled that the appropriate statistical reporting number for "rubber tracks used to propel machines such as excavators, loaders, crawlers, pavers, trenchers and other excavating machines" is 8431.49.9095, HTSUS. (Id.)

**US-38.**  Objection, ruling N304078 issued on May 10, 2019, speaks for itself and is the best evidence of its contents.  Notwithstanding and without waiving our objection, admits to the extent supported by ruling N304078.

**P-39.**  In its Ruling N304078, CBP determined that the rubber tracks for excavators were eligible for an exclusion from the China 301 Tariff granted by USTR under Note 20(i)(17) ("Vulcanized rubber tracks, each incorporating cords and cleats of steel, designed

13

for use on construction equipment (described in statistical reporting number 8431.49.9095)").

(Id. at pp. 1-2.)

**US-39**.  Objection, the ruling speaks for itself and is the best evidence of its contents.

Notwithstanding and without waiving our objection, admits to the extent supported by the ruling.

**P-40.**  Dominion Equipment Parts, LLC had sought and obtained the exclusion

granted by USTR under Note 20(i)(17). (Ex. 17 at NEP_00212-NEP_00214.)

**US-40**.  Admits.

**P-41.**  According to the Dominion Equipment website, it sells vulcanized rubber

tracks for the same Bobcat mini excavator models to which Plaintiff's counterweights attach;

namely, Models E32, E35, and E45. (Ex. 18 at NEP_00215-NEP_00219.)

**US-41.**  Admits that Pl. Ex. 18, an excerpt of the Dominion Equipment (Dominion) website,

presently reflects that Dominion sells vulcanized rubbertracks for Bobcat vehicles including

models to which Plaintiff's counterweights attach, *i.e.* models E32, E35 and E45.  Except as

specifically admitted, denies any inference that Pl. Ex. 18 (Dominion website) shows that the

vulcanized rubbertracks which were the subject of N304078 (issued on May 10, 2019) were

suitable for use on the same Bobcat mini excavator models to which Plaintiff's counterweights

attach.  *See* Pl. Ex. 18.  Further, Plaintiff's Ex. 18 is incomplete to the extent it only shows

Bobcat machines and fails to include the other Dominion webpages reflecting the other

excavator companies and loader, crawler, paver, and trencher companies for which Dominion

provides rubbertracks.  *See* https://www.depparts.com/.

**P-42.**  USTR granted an exclusion under paragraph (43) of Note 20(n), which

excludes "Backhoe counterweights each weighing more than 400 kg but not more than 600

kg (described in statistical reporting number 8431.49.9044)." (*Notice of Product Exclusions:*

14

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 32821, 32823-24 (USTR July 9, 2019).)

**US-42.** Admits.

**P-43**. The Protests covered the following entries that included counterweights weighing between 400 kg and 600 kg.

| Protest No. | Entry Nos. |
|---|---|
| 3901-19-104467 | 525-0941130-3 |
| 3001-19-100680 | 525-0929509-4 |
| 3901-19-104978 | 525-0929859-3, 525-0930554-7, 525-0931001-8, 525-0930553-9, 525-0931988-6, 525-0932325-0, 525-0931537-1 |
| 3901-20-107608 | 525-0932244-3, 525-0933121-2, 525-0933221-0, 525-0933890-2, 525-0934246-6, 525-0934248-2 |
| 3901-20-109418 | 525-0934250-8, 525-0934295-3, 525-0934661-6, 525-0935264-8, 525-0935265-5, 525-0935741-5, 525-0935990-8 |
| 3901-20-111462 | 525-0936043-5, 525-0937280-2, 525-0937281-0, 525-0937282-8, 525-0937247-1, 525-0936650-7, 525-0937283-6, 525-0937055-8, 525-0937285-1 |
| 3901-20-112714 | 525-0937138-2, 525-0938052-4, 525-0937418-8, 525-0938104-3, 525-0938103-5, 525-0938053-2, 525-0938054-0 |
| 3901-20-113245 | 525-0937901-3, 525-0937877-5, 525-0938546-5, 525-0939204-0, 525-0938547-3, 525-0937226-5, 525-0939203-2, 525-0939207-3, 525-0939299-0, 525-0939366-7, 525-0939206-5 |
| 3901-20-114389 | 525-0938548-1, 525-0938549-9, 525-0939200-8, 525-0938987-1 525-0939303-0 |
| 3901-20-115604 | 525-0940128-8, 525-0939415-2, 525-0940557-8, 525-0940555-2, 525-0940237-7, 525-0941254-1, 525-0942345-6, 525-0941507-2 |
| 3901-20-117981 | 525-0941910-8, 525-0942481-9, 525-0942780-4, 525-0942733-3, 525-0943032-9, 525-0943475-0, 525-0943474-3, 525-0943683-9 |
| 3901-20-119799 | 525-0944216-7, 525-0944507-9, 525-0944814-9 |
| 3901-20-119800 | 525-0945200-0, 525-0945686-0, 525-0945687-8 |
| 3901-20-121184 | 525-0945914-6, 525-0946520-0, 525-0946668-7, 525-0947336-0, 525-0948001-9 |
| 3901-20-121932 | 525-0947337-8, 525-0949675-9, 525-0462412-4 |

(See Ex. 2; Ex. 3; see also Ex. 10 at NEP_00004; Ex. 11 at NEP_00220-NEP_00226.)

**US-43.** Admits that the entries and protests in the table set forth in P-43 are included in the underlying summons. Admits that model numbers 7172448, 7228249, 7251832, 7331809,

7354316 and 7415671 are counterweights having weights between 400 kilograms and 600

kilograms.  To the extent that any of the above entries include any of these six model numbers,

then we agree that such entries include counterweights weighing between 400 kg and 600 kg.

Except as specifically admitted, otherwise denies.  *See* Summons ECF Docket No. 1 and P-5 and

US-5 above.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Edward F. Kenny
EDWARD F. KENNY
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
*Of Counsel*                                 26 Federal Plaza, Room 346
Mathias Rabinovitch, Esq.                    New York, New York 10278
Office of the Assistant Chief Counsel        Tel. No. (212) 264-9230 or 0480
International Trade Litigation               Attorneys for Defendant
U.S. Customs and Border Protection

Dated: January 23, 2023

16

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  JANE A. RESTANI, JUDGE
_____

NORCA ENGINEERED PRODUCTS LLC,                  :
                                                                        :
                                                                        :
                                            Plaintiff,           :                Court No.  21-00305
                                                                        :
                              v.                                     :
                                                                        :
UNITED STATES,                                                :
                                                                        :
                                            Defendant.         :
_____ :

**LIST OF EXHIBITS CITED IN DEFENDANT'S OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION AND IN ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Gov. Exhibit 1:  Webster's New World Dictionary (Third College Edition 1988) definition of "excavator."

Gov. Exhibit 2:  Webster's New World Dictionary (Third College Edition 1988) definition of "backhoe."

Gov. Exhibit 3:  The Collins English Dictionary – Complete and Unabridged, 12th Edition 2014 definition
          of "backhoe" available at https://www.thefreedictionary.com/backhoe

Gov. Exhibit 4:  Kilgore Track Hoe webpage ("https://www.kilgorecompanies.com/operating-a-
          track-hoe/"

Gov. Exhibit 5:  Kilgore "about us" and locations webpages ("https://www.
kilgorecompanies.com
          /about-us [and] /locations"

Gov. Exhibit 6:  NIOSH webpage (https://blogs.cdc.gov/niosh-science-blog/2022/03/10/stuck-
by-injuries/

Gov. Exhibit 7: Aero Rental webpage (https://www.aerorental.com/equipment.asp?action=
          category&category=15&key-a%2EME008)

Gov. Exhibit 8: Excerpt of book *Construction Engineering Design Calculations and Rules of Thumb*, 2017, (Butterworth-Heinemann an imprint of Elsevier, Cambridge, MA) by

*Norca Engineered Products LLC v. United States*, Court No. 21-00305
Exhibit List (Continued)

Ruwan Rajapakse at Section 5.6 from ScienceDirect website,
"https://www.sciencedirect.com/ topics/engineering/ excavators"

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

By:    /s/ Aimee Lee
AIMEE LEE
Assistant Director

Of Counsel:                                    /s/ Edward F. Kenny
Mathias Rabinovitch, Esq.                      EDWARD F. KENNY
Office of Assistant Chief Counsel              Senior Trial Counsel
International Trade Litigation                  Civil Division, Dept. of Justice
U.S. Customs and Border Protection             Commercial Litigation Branch
                                               26 Federal Plaza – Suite 346
DATED:  New York, New York                     New York, NY 10278
        January 23, 2023                       Attorneys for Defendant
                                               Tel. (212) 264-0480

EXHIBIT 1

THIRD COLLEGE EDITION

# Webster's New World Dictionary

OF AMERICAN ENGLISH

**VICTORIA NEUFELDT**
Editor in Chief

**DAVID B. GURALNIK**
Editor in Chief Emeritus



Webster's New World
Cleveland & New York

*Dedicated
to David B. Guralnik
lexicographical mentor
and friend*

Webster's New World Dictionary, Third College Edition

Copyright © 1988 by Simon & Schuster, Inc.

Fourth printing, with corrections

This edition is a major revision of Webster's New World
Dictionary, Second College Edition, copyright © 1986 and
1970, 1972, 1974, 1976, 1978, 1979, 1980, 1982, and 1984 by
Simon & Schuster, Inc.

All rights reserved
including the right of reproduction
in whole or in part in any form

Published by Webster's New World Dictionaries
A Division of Simon & Schuster, Inc.
Gulf + Western Building
One Gulf + Western Plaza
New York, New York 10023

Dictionary Editorial Offices: New World Dictionaries,
850 Euclid Avenue, Cleveland, Ohio 44114

WEBSTER'S NEW WORLD and colophons are registered trademarks of
Simon & Schuster, Inc.

DISTRIBUTED BY PRENTICE HALL TRADE

Database design and creation by Lexi-Comp, Inc., Hudson, Ohio.

The typefaces used are Century Schoolbook and Helvetica.

Manufactured in the United States of America

4   5   6   7   8   9     93   92   91   90   89

**Library of Congress Cataloging-in-Publication Data**

Webster's New World dictionary of American English / Victoria
E. Neufeldt, editor-in-chief. — 3rd college ed.

     1. English language—Dictionaries.   2. Americanisms—
Dictionaries.
  I. Neufeldt, Victoria E.
  PE1628.W5633     1988                          88-1712

ISBN 0-13-947169-3 (thumb-indexed)
       0-13-949280-1 (plain-edged)
       0-13-949314-X (leatherkraft)

Case 1:21-cv-00305-JAR   Document 23   Filed 01/23/23   Page 67 of 101

**ex ca·the·dra** (eks ka'thi dra; *often*, -ka the'-) [ModL, lit., from the chair < L *ex*, from + *cathedra*, CHAIR, esp. of a teacher (in LL(Ec), of a bishop)] with the authority that comes from one's rank or office: often specif. with reference to papal pronouncements, on matters of faith or morals, regarded as having authoritative finality

**ex·ca·vate** (eks'kə vāt') *vt.* -vat'ed, -vat'ing [< L *excavatus*, pp. of *excavare* < *ex-*, out + *cavare* < *cavus*, hollow: see CAVE] 1 to make a hole or cavity in, as by digging; hollow out 2 to form by hollowing out; dig (to *excavate* a tunnel) 3 to uncover or expose by digging; unearth (to *excavate* ancient ruins) 4 to dig out (earth, soil, etc.) —*vi.* to make an excavation

**ex·ca·va·tion** (eks'kə vā'shən) *n.* [L *excavatio*] 1 an excavating or being excavated 2 a hole or hollow made by excavating 3 something unearthed by excavating —**SYN.** HOLE

**ex·ca·va·tor** (eks'kə vāt'ər) *n.* a person or thing that excavates; specif., a steam shovel, dredge, etc.

**ex·ceed** (ek sēd', ik-) *vt.* [ME *exceden* < OFr *exceder* < L *excedere* < *ex-*, out, beyond + *cedere*, to go: see CEDE] 1 to go or be beyond (a limit, limiting regulation, measure, etc.) (to *exceed* a speed limit) 2 to be more than or greater than; surpass; outdo (to *exceed* one's expectations) —*vi.* [Now Rare] to surpass others, as in a quality or quantity; be outstanding

**ex·ceed·ing** (-iŋ) *adj.* surpassing; extraordinary; extreme —*adv.* [Archaic] EXCEEDINGLY

**ex·ceed·ing·ly** (-iŋ lē) *adv.* extremely; to a great degree; extraordinarily; very

**ex·cel** (ek sel', ik-) *vi.*, *vt.* -celled', -cel'ling [ME *excellen* < OFr *exceller* < L *excellere*, to raise, surpass, excel < *ex-*, out of, from + *-cellere*, to rise, project < IE base *kel-*, to project > HILL, CELT, *kolophōn*] to be better or greater than, or superior to (another or others)
**SYN.—excel** implies superiority in some quality, skill, achievement, etc. over all or over the one (or ones) specified (to *excel* at chess); **surpass** implies a going beyond (someone or something specified) in degree, amount, or quality (no one *surpasses* him in generosity); **transcend** suggests a surpassing to an extreme degree (it *transcends* all understanding); **outdo** implies a going beyond someone else or a previous record in performance (he will not be *outdone* in bravery)

**ex·cel·lence** (ek'sə lans) *n.* [ME < OFr < L *excellentia* < prp. of *excellere*] 1 the fact or condition of excelling; superiority; surpassing goodness, merit, etc. 2 something in which a person or thing excels; particular virtue 3 [E-] EXCELLENCY

**ex·cel·len·cy** (ek'sə lan sē) *n.*, *pl.* -cies [ME *excellencie* < L *excellentia*] 1 [E-] a title of honor applied to various persons of high position, as an ambassador, bishop, governor, etc.: with *His*, *Her*, or *Your* 2 EXCELLENCE

**ex·cel·lent** (ek'sə lant) *adj.* [ME < OFr < L *excellens*, prp. of *excellere*, EXCEL] 1 [Obs.] excelling; surpassing 2 outstandingly good of its kind; of exceptional merit, virtue, etc. —**ex'cel·lent·ly** *adv.*

**ex·cel·si·or** (eks sel'sē ôr; *for n.* ek sel'sē ər, ik-) *adj.*, *interj.* [L, compar. of *excelsus*, lofty, high < pp. of *excellere*, EXCEL: *n.* < orig. use as trademark] higher; always upward: used as a motto (as on the New York State seal) —*n.* long, thin wood shavings used for packing breakable things or as stuffing in some furniture

**ex·cept** (ek sept', ik-) *vt.* [ME *excepten* < OFr *excepter* < L *exceptare*, to take out, except < *exceptus*, pp. of *excipere* < *ex-*, out + *capere*, to take: see HAVE] to leave out or take out; make an exception of; exclude; omit —*vi.* [Now Rare] to object; take exception: with *to* or *against* (to *except* to a remark) —*prep.* [ME < L *exceptus* leaving out; other than; but (to *everyone except me*) —*conj.* 1 [Archaic] unless 2 [Colloq.] were it not that; only (I'd quit *except* I need the money) —**except for** if it were not for

**ex·cept·ing** (-iŋ) *prep.*, *conj.* EXCEPT

**ex·cep·tion** (ek sep'shan, ik-) *n.* [ME *excepcioun* < OFr *exception* < L *exceptio*] 1 an excepting or being excepted; omission; exclusion 2 anything that is excepted; specif., *a*) a case to which a rule, general principle, etc. does not apply *b*) a person or thing different from or treated differently from others of the same class 3 objection or opposition 4 *Law* a formal objection or reservation to court action or opinion in the course of a trial —**take exception 1** to object; demur 2 to resent something; feel offended —**the exception proves the rule** the exception tests the rule Often used to mean "the exception establishes the rule"

**ex·cep·tion·a·ble** (-a bal) *adj.* liable to exception; open to objection —**ex·cep'tion·a·bly** *adv.*

**ex·cep·tion·al** (ek sep'shə nal, ik-) *adj.* 1 constituting or occurring as an exception; not ordinary or average; esp., much above average in quality, ability, etc. *[exceptional* talents) ☆2 needing special education or presenting a special problem, as in education, because mentally gifted or, esp., because mentally, physically, or emotionally handicapped —**ex·cep·tion·al'i·ty** (-nal'ə tē), *pl.* -ties, *n.* —**ex·cep'tion·al·ly** *adv.*

**ex·cep·tive** (ek sep'tiv, ik-) *adj.* [ML *exceptivus*] 1 of, containing, or forming an exception 2 [Rare] inclined to take exception; captious

**ex·cerpt** (ek surpt', ik-; *also, and for n., always,* ek'surpt') *vt.* [< L *exceptus*, pp. of *excerpere*, to pick out, choose < *ex-*, out + *carpere*, to pluck < IE base *kerp-* < base *(s)ker-*, to cut, scrape > HARVEST] to select, take out, or quote (passages from a book, etc.); extract —*n.* a passage selected or quoted from a book, article, etc.; extract —**ex·cerp'tion** *n.*

**ex·cess** (ek ses', ik-; *also, esp. for adj.,* ek'ses') *n.* [ME & OFr *exces* < LL *excessus* < pp. of *excedere*: see EXCEED] 1 action or conduct that goes beyond the usual, reasonable, or lawful limit 2 lack of moderation; intemperance; overindulgence 3 an amount or quantity greater than is necessary, desirable, usable, etc.; too much; superfluity 4 the amount or degree by which one thing exceeds another; remainder; surplus —*adj.* more than usual; extra; surplus *[excess* profits) —*vt.* to do away with the position or job of (the science center *excessed* many researchers) —**in excess of** more than —to **excess** to too great an extent or degree; too much

**ex·ces·sive** (ek ses'iv, ik-) *adj.* [ME & OFr *excessif* < ML *excessivus*] characterized by excess; being too much or too great; immoderate; inordinate —**ex·ces'sive·ly** *adv.* —**ex·ces'sive·ness** *n.*
**SYN.—excessive** applies to that which goes beyond what is proper, right, or usual *[excessive* demands); **exorbitant** is applied to that which is unreasonably excessive and often connotes a greedy desire for more than is just or due *[exorbitant* prices); **extravagant** and **immoderate** both imply excessiveness resulting from lack of restraint or of prudence *[extravagant* praise, *immoderate* laughter); **inordinate** implies a going beyond the orderly limits of convention or the bounds of good taste *[his inordinate* pride)

**exch** exchange

**ex·change** (eks chānj', iks-) *vt.* -changed', -chang'ing [ME *eschaungen* < OFr *eschangier* < VL *excambiare*: see EX-[1] & CHANGE] 1 *a*) to give, hand over, or transfer (for another thing in return) *b*) to receive or give another thing for (something returned) 2 to give and receive (equivalent or similar things); interchange (to *exchange* gifts) 3 to give up for a substitute or alternative (to *exchange* honor for security) —*vi.* 1 to make an exchange; barter; trade 2 *Finance* to pass in exchange *[currency* that *exchanges* at par) —*n.* 1 a giving or taking of one thing for another; trade; barter 2 a giving to one another of similar things *[an exchange* of greetings) 3 the substituting of one thing for another *[an exchange* of tears for smiles) 4 a thing given or received in exchange 5 a place for exchanging; esp., a place where trade is carried on in securities or commodities by brokers, merchants, etc. *[a stock exchange)* ☆6 a central office, or a system operated by it, providing telephone communication in a community or in part of a city 7 *Commerce, Finance a*) the payment of debts by negotiable drafts or bills of exchange, without actual transfer of money *b*) a bill of exchange *c*) the fee paid for settling accounts or collecting a draft, bill of exchange, etc. *d*) an exchanging of a sum of money of one country or of a depreciated issue for the equivalent in the money of another country or of a current issue *e*) EXCHANGE RATE 7) difference in value between currencies *g*) [*pl.*] the checks, drafts, etc. presented to a clearinghouse for exchange and settlement —*adj.* 1 exchanged; interchanged 2 having to do with an exchange *[an exchange* broker) —**ex·change·a·bil'i·ty** *n.* —**ex·change'a·ble** *adj.* —**ex·chang'er** *n.*

**exchange rate** the rate at which one currency can be exchanged for another, usually expressed as the value of the one in terms of the other

**exchange student** a student who, by prior arrangement, attends a school in a foreign country while a student from that country attends a school in the country of the first

**ex·cheq·uer** (eks chek'ər, iks-; eks'chek'ər) *n.* [ME *escheker*, lit., chessboard, court of revenue, treasury < OFr *eschekier*: see CHECKER] 1 [E-] *a*) under the Norman kings of England, an administrative and judicial state department in charge of revenue (so called from a table marked into squares, on which accounts of revenue were kept with counters) *b*) later, the British Court of Exchequer, which had jurisdiction over all cases relating to government revenue, now merged in the Queen's Bench Division of the High Court of Justice *c*) [*often* E-] the British state department in charge of the national revenue 2 the funds in the British treasury 3 a treasury, as of a country or organization 4 money in one's possession; funds; finances

**ex·cide** (ek sīd', ik-) *vt.* -cid'ed, -cid'ing [L *excidere* < *ex-*, out + *caedere*, to cut: see -CIDE] [Rare] to cut out

**ex·ci·mer laser** (ek's ə mər) a type of gas laser that emits powerful pulses of ultraviolet radiation used in weapons, industrial, or medical research: this radiation is emitted as the short-lived **excimers**, dimeric molecules that can only exist when a component is energized into an excited state, return to their ground states

**ex·cip·i·ent** (ek sip'ē ənt) *n.* [< L *excipiens*, prp. of *excipere*: see EXCEPT] *Pharmacy* any of various inert substances added to a prescription to give the desired consistency or form

**ex·cis·a·ble** (ek sī'zə bal, ik-; *also, esp. for 1*, ek'sī'-) *adj.* 1 subject to an excise tax 2 that can be excised, or cut out

**ex·cise**[1] (ek'sīz' *also*, -sīs') *n.* [altered (after fol.) < *earlier accise* < MDu *accijs*, earlier *assijs* < OFr *assise*: see ASSIZE] 1 orig., any tax 2 a tax or duty on the manufacture, sale, or consumption of various commodities within a country, as liquor, tobacco, etc.: also **excise tax** 3 a fee paid for a license to carry on certain occupations, sports, etc. —*vt.* -cised', -cis'ing to put an excise on

**ex·cise**[2] (ek sīz', ik-) *vt.* -cised', -cis'ing [< L *excisus*, pp. of *excidere*: see EXCIDE] to remove (a tumor, organ, etc.) by cutting out or away —**ex·ci'sion** (-sizh'ən) *n.*

**ex·cise·man** (ek'sīz'man') *n.*, *pl.* -men' (-men') in Great Britain, a government official who collects excises and enforces the laws concerning them

**ex·cit·a·ble** (ek sīt'ə bal, ik-) *adj.* 1 that is easily excited 2 *Physiol.*

at, āte, cär; ten, ēve; is, ice; gō, hôrn, lo͞ok, to͞ol; oil, out; up, fur; *ə for unstressed vowels, as a in ago, u in focus;* ' *as in Latin* (lat''n); chin, she; *zh as in azure* (azh'ər); thin, *the*; ŋ *as in ring* (riŋ) *In etymologies:* * = unattested; < = derived from; > = from which ☆ = Americanism    **See inside front and back covers**







EXHIBIT 2

THIRD COLLEGE EDITION

# Webster's New World Dictionary

OF AMERICAN ENGLISH

**VICTORIA NEUFELDT**
Editor in Chief

**DAVID B. GURALNIK**
Editor in Chief Emeritus



**Webster's New World**
**Cleveland & New York**

*Dedicated
to David B. Guralnik
lexicographical mentor
and friend*

Webster's New World Dictionary, Third College Edition

Copyright © 1988 by Simon & Schuster, Inc.

Fourth printing, with corrections

This edition is a major revision of Webster's New World
Dictionary, Second College Edition, copyright © 1986 and
1970, 1972, 1974, 1976, 1978, 1979, 1980, 1982, and 1984 by
Simon & Schuster, Inc.

All rights reserved
including the right of reproduction
in whole or in part in any form

Published by Webster's New World Dictionaries
A Division of Simon & Schuster, Inc.
Gulf + Western Building
One Gulf + Western Plaza
New York, New York 10023

Dictionary Editorial Offices: New World Dictionaries,
850 Euclid Avenue, Cleveland, Ohio 44114

WEBSTER'S NEW WORLD and colophons are registered trademarks of
Simon & Schuster, Inc.

DISTRIBUTED BY PRENTICE HALL TRADE

Database design and creation by Lexi-Comp, Inc., Hudson, Ohio.

The typefaces used are Century Schoolbook and Helvetica.

Manufactured in the United States of America

4   5   6   7   8   9        93   92   91   90   89

**Library of Congress Cataloging-in-Publication Data**

Webster's New World dictionary of American English / Victoria
E. Neufeldt, editor-in-chief. — 3rd college ed.

  1. English language—Dictionaries.   2. Americanisms—
Dictionaries.
  I. Neufeldt, Victoria E.
  PE1628.W5633     1988                          88-1712

ISBN 0-13-947169-3 (thumb-indexed)
     0-13-949280-1 (plain-edged)
     0-13-949314-X (leatherkraft)

**back / back seat**   **100**

backward: also **back away** or **back out 3** to accumulate as the result of a stoppage /traffic *backed up* for a mile/ **4** *Baseball* to take a position behind (a teammate) in order to field a mishandled or erratically thrown ball —**back water 1** to use oars, a propeller, etc. to move backward or prevent drifting ☆**2** to withdraw from a position or a claim —**behind someone's back** without someone's knowledge or consent —**be (flat) on one's back** to be ill, bedridden, or helpless —☆**get off one's back** [Slang] to stop nagging or harassing one —**get** (or **put**) **one's back up** [Colloq.] **1** to make or become angry, as a cat arching its back **2** to be obstinate —☆**go back on** [Colloq.] **1** to be faithless or disloyal to; betray **2** to fail to keep (a promise, one's word, etc.) —st(in) **back of** at or to the rear of; behind —**turn one's back on 1** to show anger, contempt, etc. toward by turning away from **2** to ignore the plight of; desert; fail —**with one's back to the wall** in a desperate position, as a cornered fighter

**back²** (bak) *n.* [Du *bak* < LL *bacca*, water bowl] a vat or tub used in certain industrial processes

**Back** (bak) [after George *Back* (1796-1878) Arctic navigator] river in central Northwest Territories, Canada, flowing NE into the Arctic Ocean: c. 600 mi. (965 km)

**back·ache** (bak'āk') *n.* an ache or pain in the back, esp. in the lower back

**back-and-forth** (bak'ən förth') *adj.* moving forward and backward; to-and-fro

**back·beat** (bak'bēt) *n.* in popular music, a primary accent on the second and fourth beats of a four-beat measure

**back·bencher** (-ben'chər) *n.* a legislator, esp. in the British House of Commons, who is not a leader in his party

**back·bend** (-bend') *n.* an acrobatic stunt in which the body is bent backward from a standing position until the hands touch the ground

**back·bite** (-bīt') *vt., vi.* -bit', -bit'ten or -bit', -bit'ing [ME *bakbiten*: see BACK¹ & BITE] to speak maliciously about (an absent person); slander —**back'bit'er** (-bīt'ər) *n.*

**back·board** (-bôrd') *n.* **1** a board that forms or supports the back of something ☆**2** *Basketball* a flat, rigid piece of material, often glass and usually rectangular, to which the basket is attached

**back·bone** (-bōn') *n.* [ME *bakbon*: see BACK¹ & BONE] **1** the column of bones along the center of the back of vertebrate animals, including humans, made up of separate bones connected by the spinal cord, ligaments, and disk-shaped cartilage; spine: see SPINAL COLUMN, illus. **2** main support; firmest part **3** a main ridge or range of mountains **4** willpower, courage, determination, etc. **5** BACK¹ (*n.* 8) —*SYN.* FORTITUDE

**back·break·ing** (-brāk'iŋ) *adj.* requiring great physical exertion; very tiring

**back burner** [from the idea of putting a pot on a back burner of a stove to keep its contents warm] a state of temporary suspension, low priority, etc.: usually in the phrase **on the back burner** in or into such a state

**back·cast** (-kast') *n.* *Fishing* that part of a cast in which the rod is swung backward preparatory to the forward motion during which the bait, plug, fly, etc. is sent toward a desired location

**back·chat** (bak'chat') *n.* [Colloq., Chiefly Brit.] **1** BACK TALK **2** REPARTEE

**back·check** (-chek') *vt. Hockey* to check (an opponent) in the area around one's own goal, usually in an effort to prevent that player from joining others in developing an offensive threat: cf. FORECHECK

**back court** ☆**1** *Basketball* a) the half of the court which contains the basket a team is defending  b) the two guards of one team, in the game as a unit **2** *Tennis* the area on either side of the court extending from the service line to the base line at the back of the court

**back·cross** (-krôs') *vt., vi.* to cross, or breed (a hybrid) with one of its parents or with a genetic equivalent to such a parent —*n.* an instance or result of such a breeding

☆**back·date** (bak'dāt') *vt.* -dat'ed, -dat'ing to date before the actual date; predate

**back·door** (bak'dôr') *adj.* **1** of a rear entrance **2** secret; underhanded; surreptitious

**back·drop** (-dräp') *n.* **1** a curtain hung at the back of a stage, often painted to represent some scene **2** background or setting, as of an event

**backed** (bakt) *adj.* having a back or backing: *often used in hyphenated compounds meaning* having a (specified kind of) back /canvas-*backed*/

**backer** (bak'ər) *n.* **1** a person who supports or gives help, as to a protégé or undertaking; patron; sponsor **2** a person who bets on a contestant —*SYN.* SPONSOR

☆**back·field** (bak'fēld') *n. Football* the players whose usual position is behind the line of scrimmage; esp., the offensive unit that attempts to advance the ball

**back·fill** (-fil') *vt., vi.* to refill (an excavation) as with earth, etc. previously removed —*n.* material used in refilling an excavation

**back·fire** (-fīr') *n.* ☆**1** a fire started to stop an advancing prairie fire or forest fire by creating a burned area in its path **2** a premature ignition of fuel or an explosion of unburned exhaust gases in an internal-combustion engine, sometimes preventing the completion of the compression stroke and reversing the direction of the piston **3** an explosive force toward the breech, rather than through the muzzle, of a firearm —*vi.* -fired', -fir'ing ☆**1** to use or set a backfire **2** to explode as a backfire **3** to have an unexpected and unwelcome result; go awry; boomerang /his plan *backfired*/

**back-for·ma·tion** (-fôr mā'shən) *n.* **1** a word actually formed fr... but seeming to be the base of, another word (Ex.: *burgle* fr... *burglar*) **2** the process of forming such a word

**back·gam·mon** (-gam'ən) *n.* [BACK¹ + GAMMON² ] a game played a special board by two people: each has fifteen pieces, which moved according to the throw of dice

**back·ground** (-ground') *n.* **1** the part of a scene or picture that i... seems to be toward the back **2** surroundings, esp. those beh... something and providing harmony or contrast; surface agai... which something is seen **3** a less important or unobtrusive plac... position /to stay in the *background*/ **4** the whole of one's stu... training, and experience /the right *background* for the job/ **5** a)... circumstances or conditions surrounding something  b) the eve... leading up to something  c) information which will help to expl... something **6** music (in full **background music**) or sound effe... used as a subordinated accompaniment to dialogue or action, as... movies, radio, or television **7** any of various unwanted, interfer... effects produced or registered by apparatus of various kinds,... static in radio or radiation due to cosmic rays —*vt.* to provid... background for

**back·ground·er** (back'ground'ər) *n.* **1** a briefing, as by a gove... ment official, specif. of newspersons who agree not to name t... official in their report **2** a printed handout containing backgrou... information

**back·hand** (-hand') *n.* **1** handwriting that slants backward, up... the left **2** a kind of stroke, as in tennis, with... the back of the hand turned forward, the arm... being brought forward from across the body... —*adj.* **1** done with the back of the hand... turned inward, as for a baseball catch, or for-... ward, as for a tennis stroke, and with the arm... across the body **2** writt$n in backhand —... *adv.* with a backhand —*vt.* ☆**1** to catch (a... ball) with the back of the hand turned inward... and arm extended across the body **2** to hit (a... ball) with a backhand stroke



BACKHAN... STROKE

**back·hand·ed** (-han'did) *adj.* **1** BACKHAND **2** expressing or expressed in an indirect or sar-... castic way; not sincere; equivocal /a *back-... handed* compliment/ **3** *Sports* performed by... backhanding the ball /a *backhanded* catch/ —... *adv.* with a backhand

**back·haul** (-hôl') *n.* the return trip made, as... by a truck or cargo ship, after delivering a load to a specifi... destination —*vi.* to make such a trip, often with no load as requir... by regulations

**back·hoe** (-hō') *n.* **1** a power-driven excavating vehicle with... hinged bucket at the end of a long, jointed arm: it digs by drawi... the bucket toward the power unit **2** the digging mechanism of t... vehicle

**back·house** (-hous') *n.* an outdoor privy; outhouse

**back·ing** (-iŋ) *n.* **1** something placed in back or forming a back f... support or strength **2** support or aid given to a person or cau... endorsement **3** those giving such support or aid **4** [Slang] a mu... cal accompaniment

**back judge** *Football* an official who checks the eligibility of pa... receivers, watches for rule infractions by pass receivers and defe... sive backs, etc.

**back·lash** (-lash') *n.* **1** a quick, sharp recoil **2** any sudden or viole... reaction; specif., strong political or social reaction resulting fro... fear or resentment of a movement, candidate, etc. **3** a snarl in... reeled fishing line, resulting from an imperfect cast **4** the jarri... reaction of loose or worn parts; also, the play in these parts

**back·less** (-lis) *adj.* made without a back /a *backless* dress/

**back·list** (-list') *n.* all the books of a publisher that are kept in pri... over a relatively long period of time —*vt.* to include in a backli...

☆**back·log** (-lôg') *n.* **1** a large log at the back of a fire, as in... fireplace **2** a reserve of something stored, saved, etc. **3** an accum... lation of unfilled orders, unfinished work, etc. —*vi., vt.* -logge... -log'ging to accumulate as a backlog

**back nine** *Golf* the holes numbered 10 through 18, as a unit: s... HOLE (*n.* 7b)

☆**back number 1** an old issue of a periodical **2** [Colloq.] an ol... fashioned person or thing

**back order** an order to be filled when stock is renewed

**back-or·der** (-ôrd'ər) *vt.* to deal with as a back order

☆**back·pack** (-pak') *n.* **1** a kind of knapsack, often attached to... lightweight frame, worn by campers or hikers **2** a piece of equip... ment, as a radio transmitter, used while being carried on the bac... **3** an astronaut's pack used in extravehicular activities to provide... life support system and locomotion **4** a scientific instrument pac... attached to people, wild animals, etc. to monitor their physic... conditions, locations, etc. —*vi.* to hike wearing a backpack —*vt.*... carry in a backpack —**back'pack'er** *n.*

**back·ped·al** (-ped'l) *vi.* -ped'aled or -ped'alled, -ped'al·ing or -ped... al·ling **1** to press backward on the pedals of a bicycle, tricycle, etc... as to brake or move backward ☆**2** to move backward quickly, as i... boxing, to avoid blows ☆**3** to retract an earlier opinion

**back·rest** (-rest') *n.* a support for or at the back

☆**back road** a road that is away from the main road; country roa... esp. an unpaved one

**back·scat·ter·ing** (-skat'ər iŋ) *n.* the scattering of rays or partic... at angles to the original direction of motion of greater than 90... Also **back'scat'ter**

**back seat** a secondary or inconspicuous position

EXHIBIT 3

# backhoe 🇺🇸 🇬🇧

Also found in: **Thesaurus**, **Encyclopedia**, **Wikipedia**.

## back·hoe 🔊 (băkʹhōʹ)

*n.*

A mechanical excavator whose bucket is attached by a hinge to a two-part arm and is drawn backward to the machine when in operation.

**backʹhoeʹ** *v.*

American Heritage® Dictionary of the English Language, Fifth Edition. Copyright © 2016 by Houghton Mifflin Harcourt Publishing Company. Published by Houghton Mifflin Harcourt Publishing Company. All rights reserved.

## backhoe  (ˈbækˌhəʊ)

*n*

**1.** (Civil Engineering) a mechanical excavator with an extension consisting of a bucket on an extending arm, which can be used to scoop up earth as it is drawn back towards the machine
**2.** (Civil Engineering) the extending arm and bucket of this type of excavator

*vb* (*tr*)

(Civil Engineering) to dig with a backhoe

Collins English Dictionary – Complete and Unabridged, 12th Edition 2014 © HarperCollins Publishers 1991, 1994, 1998, 2000, 2003, 2006, 2007, 2009, 2011, 2014

## back•hoe  (ˈbækˌhoʊ)

*n.*

an excavating machine with a bucket attached to a hinged boom that digs by being drawn toward the machine.

[1940–1945]

Random House Kernerman Webster's College Dictionary, © 2010 K Dictionaries Ltd. Copyright 2005, 1997, 1991 by Random House, Inc. All rights reserved.

## Thesaurus

**Legend:** ≡ Synonyms  ↔ Related Words  ≠ Antonyms

Switch to **new thesaurus**

**Noun 1. backhoe** - an excavator whose shovel bucket is attached to a hinged boom and is drawn backward to move earth



↔ **power shovel**, **digger**, **excavator**, **shovel** - a machine for excavating

↔ **scoop shovel**, **scoop** - the shovel or bucket of a dredge or backhoe



Advertisement. Bad banner? Please let us know Remove Ads



**1-10pcs Universal Winter Snow Mud Anti-skid Tir...**

Shop

Advertisement. Bad banner? Please let us know Remove Ads

| Copyright © 2003-2023 Farlex, Inc

Disclaimer

All content on this website, including dictionary, thesaurus, literature, geography, and other reference data is for informational purposes only. This information should not be considered complete, up to date, and is not intended to be used in place of a visit, consultation, or advice of a legal, medical, or any other professional.

EXHIBIT 4

 

**KILGORE**
COMPANIES

# OPERATING A TRACK HOE

October 7, 2021
By <u>marcus</u>



ABOUT US          CAREERS          OUR COMPANIES          PRODUCTS & SERVICES          LOCATIONS

CONTACT

Outdoor construction jobs often involve heavy machinery such as cranes, wrecking balls, and tipper trucks. Each piece of equipment has its role to play, with unique applications and demands on the worksite. Today we will cover track hoes, their uses, and what you should look out for when hiring a <u>track hoe operator</u>.

## WHAT IS A TRACK HOE?

A track hoe, also known as a backhoe, is a type of excavator. It is one of the most commonly used pieces of equipment in outdoor construction jobs. The name track hoe comes because it uses rotating wheels similar to tanks used by the military.

Track hoes come in different sizes, from mini-excavators to <u>larger excavators</u> that weigh several dozen tons.

## HOW ARE TRACK HOES USED?

The most common application for track hoes in <u>construction jobs</u> is in preparation and clean-up of the worksite. It can range from landscaping to demolitions. Track hoes can also dig holes to lay pipes, cables, or any other underground installations.

They can rotate 360 degrees and lift heavy loads, making them versatile and valuable pieces of heavy construction equipment.

# THINGS TO LOOK OUT FOR WHEN HIRING A TRACK HOE OPERATOR

Track hoes are complex pieces of machinery. Even the most miniature excavator models require a high degree of proficiency to use. Track hoe operators must be mindful of safety precautions. They must also have experience in outdoor construction, especially that which involves heavy mechanical equipment.

Track hoes are mighty machines, so they need a seasoned hand. Track hoe operators should:

> Undergo an excavator training course

> Know where power lines are, both overhead and underground

> Avoid obstacles such as other equipment, site workers, and vehicles

> Avoid overconfidence, which can lead to costly or even underline fatal mistakes

# SAFETY IS KEY

Above all, track hoes should operate in a manner that does not compromise safety. Use of heavy construction equipment needs people who have the training, experience, and a cautious approach. You can trust Kilgore Companies to do that.

## CONTACT US

First Name

Last Name

Email

Phone

Attach a Resume

Choose File   No file chosen

Max. file size: 500 MB.

SUBMIT

About Us          Careers          Our Companies          Products & Services          Locations          Contact

© Kilgore Companies 2023 All Rights Reserved.

Privacy Policy

Terms & Conditions



EXHIBIT 5



# HELPING BUILD COMMUNITIES.

Kilgore Companies is a group of successful construction materials companies. Together, we offer aggregates, ready mix concrete, paving, and construction services. Our businesses work hard to meet the growing needs of communities throughout the Intermountain West. We handle a range of jobs from local to large-scale projects. We share a vision of providing safe, quality products and services to every client.

# THE KILGORE WAY

**Our values are reflected in our results.**

An employee at Kilgore Companies creates a safe work environment. They are a person of integrity that possesses a high degree of initiative, engages other people in the communication process, employs autonomy, and holds themselves and others accountable.

# SAFETY

**Our success relies on safety.**

Kilgore Companies achieves world class success by integrating safety into everything we do. Safety is a shared responsibility of every employee. The safety of our employees, our products, and our communities is our business. Profitability, quality, and efficiency are the product of an engaged and empowered workforce working safely towards collective goals.

About Us          Careers          Our Companies          Products & Services          Locations          Contact

© Kilgore Companies 2023 All Rights Reserved.

Privacy Policy

Terms & Conditions

SUMMIT
Materials



# LOCATIONS



ABOUT US        CAREERS        OUR COMPANIES        PRODUCTS & SERVICES        **LOCATIONS**

## CONTACT

Select Category ▼

State ▼

Sort By ▼

RESET

### 23 Road Pit

2297 River Road
Grand Junction, CO 81505

Phone: 800-675-4598 Fax:

## Agra D Pit

3559 County Road 307
Durango, CO 81303

Phone: 800-675-4598 Fax:

## American Fork Ready Mix

618 E 1700 S
American Fork, UT 84003

Phone: 801-255-3589 Fax:

## Arcuby Pit

945 17 1/4 Road Fruita, CO 81521
Fruita, CO 81521

Phone: 800-675-4598 Fax:

## Aspen Construction Office/Plant/Pit

7911 Upper River Road
Woody Creek, CO 81656

Phone: 800-675-4598 Fax:

## Aururo Ready Mix

3520 S Old Hwy 89
Aurora, UT 84620

Phone: 801-255-3589 Fax:

## Bauer Pit

West Bauer Road
Tooele, UT 84074

Phone: 801-250-0132 Fax:

ABOUT US     CAREERS     OUR COMPANIES     PRODUCTS & SERVICES     LOCATIONS

CONTACT

## Benjamin Quarry & Asphalt

7200 S 6000 W
Benjamin, UT 84660

Phone: 801-250-0132 Fax:

## Bennett Pit

1470 Highway 50
Delta, CO 81416

Phone: 800-675-4598 Fax:

## Beswick Pit

Near 2975 E1/2 Road
Grand Junction, CO 81504

Phone: 800-675-4598 Fax:

## Bluffdate Ready Mix

16200 South 700 West
Salt Lake City, UT 84065

Phone: 801-255-3589 Fax:

## Bradbury Pit

US 50 /Bean Ranch Road
Whitewater, CO 81527

Phone: 800-675-4598 Fax:

## Breckenridge Pit

5090 TIGER RD.
Breckenridge, CO 80424

Phone: Fax:

## Breeze Basin Pit

5801 Highway 394
Craig, CO 81625

Phone: 800-675-4598 Fax:

## Brigham City Pit

1200 East 700 South
Brigham City, UT 84302

Phone: 435-752-2001 Fax:

## Burley Pit

50 E 525 S
Burley, ID 83318

Carbondale, CO 81623

Phone: 970-963-5700 Fax:

## Clear Creek Pit

33554 U.S. 40
Idaho Springs, CO 80452

Phone: Fax:

## Clifton Pit

510 34 Road
Clifton, CO 81520

Phone: 800-675-4598 Fax:

ABOUT US  CAREERS  OUR COMPANIES  PRODUCTS & SERVICES  LOCATIONS  CONTACT

### Corporate Office
7057 W 2100 S
West Valley City, UT 84128
Phone: 800-675-4598 Fax:

### Craig Construction Office/Pit/Plant
1848 East 1st Street
Craig, CO 81625
Phone: 800-675-4598 Fax:

### DC Pit
500 E 225 N
Rupert, ID 83350
Phone: 208-733-7141 Fax:

### Delta Pit
8020 Highway 65
Delta, CO 81416
Phone: 800-675-4598 Fax:

### Durango Office
691 CR 252 (Trimble Lane)
Durango, CO 81301
Phone: 800-675-4598 Fax:

### Durango Store
131 KayCee Lane
Durango, CO 81301
Phone: 970-385-6733 Fax:

### East Bradbury Pit

### East West Asphalt
951 Fairgrounds Road
Eagle, CO 81631
Phone: 800-675-4598 Fax:

### Edwards Construction Office
240 Airpark Drive
Gypsum, CO 81637
Phone: 800-675-4598 Fax:

### Elam Construction Main Office
556 Struthers Ave.
Grand Junction, CO 81501
Phone: 800-675-4598 Fax:

ABOUT US    CAREERS    OUR COMPANIES    CONTACT    PRODUCTS & SERVICES    LOCATIONS

## Empire Pit

12456 HWY 40
Empire, CO 80438

Phone: Fax:

## Erda Pit

5800 Highway 36
Tooele, UT 84074

Phone: 801-250-0132 Fax:

## Fairplay Pit

50528 HWY 9
Fairplay, CO 80440

Phone: Fax:

## Feitcher/Vale Pit

County Road 62A
Clark, CO 80428

Phone: 800-675-4598 Fax:

## Feierborn Pit

342 29 Road
Grand Junction, CO 81501

Phone: 800-675-4598 Fax:

## Fraser Pit

2270 County Rd. 5
Fraser, CO 80442

Phone: Fax:

## Grand Junction Ready Mix

2868 I-70 Bus Loop
Grand Junction, CO 81501

Phone: 800-675-4598 Fax:

## Grand Junction Store

2868 I-70 Bus Loop
Grand Junction, CO 81501

Phone: 970-243-4604 Fax:

## Gunnison River Pit

W Side Gunnison River/S Hw 141
Whitewater, CO 81527

## Gypsum Store

Phone: 800-675-4598 Fax:
240 Airpark Drive
Gypsum, CO 81637

Phone: 970-524-4440 Fax:

## Highland Pit

11200 North 4600
West Highland, UT 84003

Phone: 801-250-0132 Fax:

## Hyrum Plant

410 North 800 East
Hyrum, UT 84319

Phone: 435-752-2001 Fax:

## Jerome Batch Plant

41 S 100 W
Jerome, ID 83301

Phone: 208-324-4651 Fax:

## Karp Pit

958 17 1/2 Road
Fruita, CO 81521

Phone: 800-675-4598 Fax:

## Kemmerer Pit

120 A East Elk Street

37757 HWY 40
Kremmling, CO 80459

Phone: Fax:

## Kremmling-Curry Pit

MM1 CR 2
Kremmling, CO 80459

Phone: Fax:

## Kremmling-Yust Pit

881 CR 1
Kremmling, CO 80459

Phone: Fax:

Case 1:21-cv-00305-JLR Document 54-2 Filed 01/22/22 Page 86 of 101

## Logan Office

1000 S Main St
Logan, UT 84321

Phone:435-752-2001 Fax:

## Main Office

370 Blairtown Road
Rock Springs, WY 82901

Phone:307-362-7948 Fax:

## Manti Ready Mix

770 South 300 West
Manti, UT 84642

Phone:801-255-3589 Fax:

## Moab Office

4910 Old Airport Rd
Moab, UT 84532

Phone:435-259-5809 Fax:

## Mona Pit

Hwy 191 North Canyon Ln
Mona, UT 84645

Phone:801-250-0132 Fax:

## Mona Ready Mix

2400 North 1435
East Mona, UT 84645

Phone:801-255-3589 Fax:

## Mt Pleasant Ready Mix

597 South 600
East Mt. Pleasant, UT 84647

Phone:801-255-3589 Fax:

## Mule Farm Pit

100 26 3/8 Road
Grand Junction, CO 81503

Phone:800-675-4598 Fax:

## North Salt Lake Ready Mix

1110 W 2300 N
Salt Lake City, UT 84116

ABOUT US    CAREERS    OUR COMPANIES    PRODUCTS & SERVICES    CONTACT    LOCATIONS

**Olsen Pit**
US Hwy 350 MP 19, WY 83113
Phone: 801-255-3589 Fax:

**Parker Pit**
620 E 300 N
Rupert, ID 83350
Phone: 307-362-7948 Fax:
Phone: 208-733-7141 Fax:

**Parleys Quarry**
I-80 Quarry Exit 131
Salt Lake City, UT 84109
Phone: 801-250-0132 Fax:

**Rocky Ridge Pit**
1830 Highway 112
Tooele, UT 84074
Phone: 801-250-0132 Fax:

**Roland Asphalt**
2353 River Road
Grand Junction, CO 81505
Phone: 800-675-4598 Fax:

**Rupert Batch Plant**
244 Read Ave
Rupert, ID 83350

**Sierra North Office**
4150 Smiley Rd North
Las Vegas, NV 89081
Phone: 702-644-9750 Fax:

**Sierra Sand Pit**
100 Sierra Ready Mix Road
Jean, NV 89019
Phone: 702-644-9750 Fax:

**Sierra South Plant**

13890 South Decatur
Sloan, NV 89054

Phone: Fax:

**Silverthorne Office**

28755 HWY 9
Silverthorne, CO 80498

Phone: Fax:

**Soaring Eagle Pit**

1972 Broadway
Grand Junction, CO 81507

Phone: 800-675-4598 Fax:

**Springville Ready Mix**

1600 South 440 West
Woods Cross, UT 84663

Phone: 801-255-3589 Fax:

**Steamboat Springs Office**

1855 Elk Rive Plz
Steamboat Springs, CO 80487

Phone: 800-675-4598 Fax:

**Stockton Pit**

55 Hwy 36
Stockton, UT 84071

Phone: 801-250-0132 Fax:

**Tremonton Batch Plant**

**Una Pit**

1057 Addison Ave West
Twin Falls, ID 83301

Phone: 208-733-7141 Fax:

318 County Road 300
Parachute, CO 81635

Phone: 800-675-4598 Fax:

**Walker Gravel Pit**

4979 County Road 250
Durango, CO 81302

Phone: 800-675-4598 Fax:

ABOUT US

CAREERS

OUR COMPANIES

PRODUCTS & SERVICES

LOCATIONS

CONTACT

## Wellsville/Kerr Pit

West 5400 South Street
Wellsville, UT 84339

Phone: 435-752-2001 Fax:

## West Haven Ready Mix

1800 S 2050 W
West Haven, UT 84401

Phone: 801-255-3589 Fax:

## West Jordan Ready Mix

5792 West Axel Park Rd
West Jordan, UT 84088

Phone: 801-255-3589 Fax:

## West Valley Pit & Asphalt

6685 W 5400 S
WVC, UT 84118

Phone: 801-250-0132 Fax:

## West Valley Ready Mix

6685 W 5400 S
WVC, UT 84118

Phone: 801-255-3589 Fax:

## Whitewater Pit

525 Desert Road
Whitewater, CO 81527

Phone: 800-675-4598 Fax:

## Willow Bend Pit

Highway 550
Durango, CO 81301

Phone: 800-675-4598 Fax:

About Us    Careers    Our Companies    Products & Services    Locations    Contact

© Kilgore Companies 2023 All Rights Reserved.

Privacy Policy

Terms & Conditions



EXHIBIT 6


# Preventing Struck-by Fatalities Related to Excavator Quick Couplers, Buckets, and Attachments

March 10, 2022 by Laura Styles, Hank Cierpich, Robert Harrison, David Schutt, Scott Earnest, Nancy T. Romano, CDR Elizabeth Garza, Jette Novakovich, Douglas Trout, and LT Bryan Wimer



Figure 1. Hydraulic Excavator Photo © Getty Images

The 3rd annual National Stand-Down to Prevent Struck-by Incidents will take place April 11–15, 2022. As part of these efforts, NIOSH and others are highlighting the lethal struck-by risk related to excavator quick couplers. A quick coupler failure can cause the attachment to fall suddenly, causing death, injury, and/or damage to the excavator and attachment.

## Background

Hydraulic excavators (Figure 1 and 2) are used in construction to move large quantities of earth. Many excavators have tracks for movement and are commonly called "trackhoes" or "backhoes." An excavator quick coupling device (quick coupler) can save a lot of time on the job site, but when an excavator bucket unintentionally detaches from a quick coupler, worker fatalities can – and have – occurred. Quick couplers allow for the rapid change of buckets and other attachments on the end of excavator dipper arms. Depending on the design, they may be used to connect attachments remotely from the cab or may require the operator to complete the connection of the device manually on the ground by inserting a locking pin. Safety mechanisms are built into most modern quick couplers, but they are not fail-proof.



Figure 2. Quick coupler, bucket, and excavator Photo © Getty Images

Struck-by incidents are a leading cause of death among construction workers [1], and since 1992 the leading cause of nonfatal injuries in the construction industry [2]. Excavators are dangerous to work around. The boom and dipper arm move quickly in small spaces such as a trench and carry extremely heavy loads. An excavator bucket can weigh 900 pounds while empty, and significantly more when holding soil or rock, making a failure very dangerous.

Three deaths have been reported since 2019 as a result of a worker being crushed by a bucket that fell from a quick coupler. While quick couplers have their own individual safety specifications, it is important to note that employers must ensure their workers are never working beneath a bucket, attachment, or load, and that workers should never be within the swing radius of an operating excavator. If workers are located outside of this hazard zone, there is much less risk of injury or death if a failure occurs. Furthermore, OSHA prohibits working beneath a load or within the swing radius of an excavator [3-6], and manufacturer and industry guidelines provide strong language recommending against this all-too-common practice [7-11]. If these guidelines are not followed, injuries and death can occur.

## Case Studies/FACE Reports

As part of its ongoing mission, the NIOSH Fatality Assessment and Control Evaluation (FACE) program aims to prevent occupational fatalities across the nation by identifying and investigating work situations at high risk for injury, and then formulating and disseminating prevention strategies to those who can intervene in the workplace.

California is one of the states funded by NIOSH to perform fatality assessments and recent excavator quick coupler deaths in that state have led the California FACE program to share findings from their investigations to improve worker safety:

- California FACE Case Study #1: A 67-year-old pipefitter was killed while working in a trench below the bucket of an excavator using a quick coupler device (Figure 3). The quick coupler likely suffered a mechanical failure, and the bucket detached while digging, landing on the 15-year-veteran pipefitter and killing him. There was no one on site designated as an OSHA competent trench supervisor to prevent the worker from standing beneath the bucket [13].

- **California FACE Case Study #2**: A 21-year-old heavy equipment trainee was killed when he attached a bucket using a quick coupler device to an excavator. He was operating the excavator as a young worker receiving excavator safety training, and he elevated the boom in order to inspect the bucket from below. The bucket detached while the worker was below the bucket and was immediately killed from his injuries [14].

These case studies, combined with other research, demonstrate that most quick coupler failures are a result of a combination of the following: inadequate training or supervision, engineering or mechanical failures, operator error, or work culture that dismisses the hazard [15,16,17].



Figure 3. Location where worker was struck and killed by a detached bucket. Photo courtesy CA/FACE report.

## Prevention

**Workers should be trained to always assume that a quick coupler has the potential to fail and should never be below a bucket, attachment, or other load.**

Employers need to provide training and on-site competent supervision to ensure no employees enter an area that puts them in danger. Likewise, workers and operators must adhere to training guidelines and safe practices to protect themselves. The common theme in the two California FACE case studies is that a worker was standing below an elevated load. As noted earlier, OSHA prohibits working below an elevated load, and manufacturers and industry associations state that workers should never be beneath an elevated load. If a load falls unexpectedly, either from improper attachment of a quick coupler device or a mechanical failure, death or serious injury can occur.

Following are recommendations to prevent injuries or fatalities from excavators with quick coupler devices:

- First and foremost, maintain work practices and administrative procedures to keep workers away from an elevated load and out of the swing radius of both the excavator dipper arm and the excavator superstructure.
- Ensure a training program has been implemented for operators who use quick couplers.
- Always ensure the quick coupler is properly engaged by using approved safety checks, visual indicators, and/or warning devices. If required by the manufacturer, the safety locking pin must be in place prior to lifting the attachment off the ground [18].
- Prior to using an attachment, always perform a connection test as specified by the manufacturer [7, 8,15,18].
- Adhere to regular maintenance of the quick coupler device according to manufacturer guidelines [15,18].
- If a quick coupler or an attachment needs to be inspected, do not approach the device unless the attachment is lowered and resting on the ground. This is equally important for manually attached quick couplers that require a worker to secure the attachment or manually place a manufacturer-specified safety locking pin [18].
- Use only manufacturer-approved and compatible attachments.
- Install retrofit safety kits on older quick coupler devices or upgrade to newer quick couplers with built-in safety mechanisms. Human detection systems may also be available in some newer excavators to prevent contact with a worker who is within the swing radius [15,17,19,20].

Lessons learned from fatalities involving excavator quick couplers show that these time-saving devices can be dangerous. Employers need to train operators to use caution when other workers are nearby, maintain and inspect equipment properly, and ensure the attachments are correctly secured prior to use.

## National Stand-Down to Prevent Struck-By Incidents



The National Occupational Research Agenda (NORA) Construction Sector Council is undertaking a number of initiatives to increase awareness of struck-by hazards and ways to prevent them, including coordinating the annual National Stand-Down to Prevent Struck-by Incidents.

The 3rd annual National Stand-Down to Prevent Struck-by Incidents is taking place April 11 – 15, 2022. This year there will be free webinars on work zone safety, lift zone/heavy equipment safety, and dropped objects to raise awareness on these hazards and what companies can do to prevent these struck-by incidents. Companies are encouraged to conduct a Safety Stand-Down by taking a break to have a toolbox talk, conducting safety equipment inspections, or discussing job specific hazards. Managers are encouraged to plan a stand-down anytime that works best for their workplace.

*Laura Styles, MPH; Hank Cierpich; Robert Harrison, MD, MPH – California Department of Public Health*

*David Schutt, MS, PhD Student Colorado State University*

Scott Earnest, PhD, PE; CSP; Nancy T. Romano M.S., CSHM; CDR Elizabeth Garza, MPH, CPH; J'ette Novakovich, PhD, MS, MA; Douglas Trout, MD, MHS; and LT Bryan Wimer – National Institute for Occupational Safety and Health

Case 1:21-cv-00265-JAR  Document 23    Filed 01/23/23    Page 93 of 101

# References

[1] Wang, X. W., Katz, R., Schneider, S., Memarian, B., & Dong, X. W. (2018). Struck-by injuries and prevention in the construction industry. *The Center for Construction Research and Training, Silver Spring.* https://www.cpwr.com/wp-content/uploads/publications/Quarter2-QDR-2017.pdf

[2] Dong, Xiuwen & Wang, Xuanwen & Katz, Rebecca. (2018). The sixth edition of The Construction Chart Book – The U.S. Construction Industry and Its Workers, Chart 43d. https://www.cpwr.com/research/data-center/the-construction-chart-book/chart-book-6th-edition-fatal-and-nonfatal-injuries-leading-causes-of-fatal-and-nonfatal-injuries-in-construction/

[3] Occupational Safety and Health Administration. (1994). *Occupational safety and health standards: Occupational health and environmental control: Occupational noise exposure* (OSHA Standard No. 1926.651). United States Department of Labor. https://www.osha.gov/laws-regs/regulations/standardnumber/1926/1926.651

[4] Occupational Safety and Health Administration. (2015). *Occupational safety and health standards: Occupational health and environmental control: Occupational noise exposure* (OSHA Standard No. 1926.21). United States Department of Labor. https://www.osha.gov/laws-regs/regulations/standardnumber/1926/1926.21

[5] Occupational Safety and Health Administration. (2003). United States Department of Labor. https://www.osha.gov/laws-regs/standardinterpretations/2003-01-16-0 (Accessed Feb. 7, 2022).

[6] Occupational Safety and Health Administration. (1970). *Occupational safety and health standards: Occupational health and environmental control: Occupational noise exposure* (OSH Act of 1970 Section 5(a)(1)). United States Department of Labor. https://www.osha.gov/laws-regs/oshact/section5-duties

[7] Hill Tefra Installation and User Manual. (2015). Newry, County Down, Northern Ireland. https://www.hillattach.com/wp-content/uploads/2020/08/tefra_coupler_user_manual.pdf (Accessed Feb. 7, 2022).

[8] Werk-Brau Co., Inc. D-Lock Coupler Installation and Operation Manual. https://werk-brau.com/wp-content/uploads/2019/12/D-Lock-Manual-Rev-F.pdf (Accessed Feb. 7, 2022).

[9] Komatsu Construction. (Oct. 29, 2018). *Komatsu Safety – Avoiding Pinch Points* [Video]. YouTube. https://youtu.be/V8s_YAc3svA?t=131 (Accessed Feb. 7, 2022).

[10] Cat® Products. (Aug. 16, 2021). *Safety Tips for your Cat® Excavator* [Video]. YouTube. https://youtu.be/CJM_qHYXJDA?t=77 (Accessed Feb 7, 2022).

[11] Doosan Infracore North America. (Dec. 11, 2015). *Doosan Excavators: Heavy Equipment Training & Safety* [Video]. YouTube. https://youtu.be/CDXS2ZFjvrc?t=706 (Accessed Feb. 7, 2022).

[12] Association of Equipment Manufacturers (AEM). (2010). *AEM Safety Manual for Hydraulic Excavators.* Milwaukee, WI. https://shop.aem.org/AEM%20Safety/aem-safety-products/hydraulic-excavator-safety-manual/ (Accessed 1/27/2022).

[13] CA/FACE (Aug. 4, 2021). https://www.cdc.gov/niosh/face/pdfs/20ca002.pdf

[14] CA/FACE (July 2, 2021). https://www.cdc.gov/niosh/face/pdfs/20ca001.pdf

[15] Occupational Safety and Health Administration (OSHA). (July 22, 2005). *Hazards of Inadequately Securing Hydraulic Excavator Buckets When Using Quick Coupling Devices.* Safety and Health Information Bulletin. https://www.osha.gov/sites/default/files/publications/shib072205a.pdf

[16] Edwards, D. J., & Holt, G. D. (2008). Health and safety issues relating to construction excavators and their attachments. *Engineering, Construction and Architectural Management.* https://www.researchgate.net/profile/David-Edwards-59/publication/235318803_Health_and_safety_issues_relating_to_construction_excavators_and_their_attachments/links/58fb24a30f7e9ba3ba5201dc/Health-and-safety-issues-relating-to-construction-excavators-and-their-attachments.pdf

[17] Rinneberg, S., Teizer, J., Kessler, S., & Günthner, W. A. (2015). Smart quick coupling system for safe equipment attachment selection and operation. In *ISARC. Proceedings of the International Symposium on Automation and Robotics inConstruction* (Vol. 32, p. 1). IAARC Publications. http://www.iaarc.org/publications/fulltext/FFACE-ISARC15-2997841.pdf

[18] National Institute for Occupational Safety and Health (NIOSH). (Nov. 2003). *Preventing Injuries When Working With Hydraulic Excavators and Backhoe Loaders.* Workplace Solutions Publication No. 2004- Document. www3.cdc.gov/doi/abs/10.1061/3-solutions/publications/2004-107.pdf

[19] Jo, B. W., Lee, Y. S., Kim, J. H., Kim, D. K., & Choi, P. H. (2017). Proximity warning and excavator control system for prevention of collision accidents. *Sustainability, 9*(8), 1488. https://www.mdpi.com/2071-1050/9/8/1488/htm

[20] Son, H., Seong, H., Choi, H., & Kim, C. (2019). Real-time vision-based warning system for prevention of collisions between workers and heavy equipment. *Journal of Computing in Civil Engineering, 33*(5), 04019029. https://ascelibrary.org/doi/abs/10.1061/%28ASCE%29CP.1943-5487.0000845

March 10, 2022 by Laura Styles, Hank Clerpich, Robert Harrison, David Schutt, Scott Earnest, Nancy T. Romano, CDR Elizabeth Garza, Jette Novakovich, Douglas Trout, and LT Bryan Wimer

Construction

---

## One comment on "Preventing Struck-by Fatalities Related to Excavator Quick Couplers, Buckets, and Attachments"

Comments listed below are posted by individuals not associated with CDC, unless otherwise stated. These comments do not represent the official views of CDC, and CDC does not guarantee that any information posted by individuals on this site is correct, and disclaims any liability for any loss or damage resulting from reliance on any such information. Read more about our comment policy »

Thank you
Reply

## Post a Comment

Your email address will not be published.

Comment

All comments posted become a part of the public domain, and users are responsible for their comments. This is a moderated site and your comments will be reviewed before they are posted. Read more about our comment policy »

Name

Email

Post Comment

Page last reviewed: March 11, 2022
Page last updated: March 11, 2022

EXHIBIT 7





**Call Us!**
319-338-9711

Search



**227 Kirkwood Ave • Iowa City, IA 52240**

Resources | Directions/Hours

| Equipment Rentals | Party Rentals | Tent FAQs | Used Equipment | Photo Galleries | About Us |
|---|---|---|---|---|---|

## Equipment Rentals

- Air Compressors
- Auto Tools
- Barricades & Road Signs
- Chippers
- Compaction Equipment
- Concrete/Cement Equipment
- Drywall / Painting
- Electrical Hand Tools
- Excavator Bucket & Breaker
- Excavators & Backhoes
- Fans & Dehumidifiers
- Flooring Equipment
- Forklift Attachments
- Forklifts
- Generators & Light Towers
- Hand Tools
- Heating and Cooling
- Ladders
- Lawn & Garden Equipment
- Lift (Boom)
- Lift (Push Around)
- Lift (Scissor)
- Lift (Trailer Mounted)
- Lift (Vertical Mast)
- Locating Equipment
- Log Splitters
- Material Handling
- Miscellaneous Item
- Nailers & Staplers
- Plumbing Equipment & Water Pumps
- Post Hole Augers
- Pressure Washers
- Saws
- Scaffolding
- Skid Loader (Attachment)

**Excavators & Backhoes::**

## Kubota K008 Mini Hoe

**Daily:** $200.00

**Weekly:** $600.00

**Comments:**

- Open Cab
- Weight: 2,200 lbs
- Dig Depth: 5' 8" (68")
- Buckets: 7" - 12"
- Width: 2' 4" (28") - 2' 10" (34") Adjustable
- Height: 7' 4" (88") With Roll Bar
- Height: 5' 9" (69") Without Roll Bar
- Horsepower: 10.3
- Controls: Backhoe
- Tier 4-Diesel Engine
- Rubber Tracks



Image for reference only
Actual item may look different
Click on image for larger view

**Also check the following item(s) related to the above:**
▶ Hyd. Breaker K008 - KX018 Epiroc SB1

* Prices are subject to change. Applicable sales tax, delivery, and other fees are not included in this price estimate.

* Please call us with any questions about our **kubota k008 mini hoe rentals.**
**We serve Iowa City, Cedar Rapids, Coralville, North Liberty, Tiffin, Solon, Mt. Vernon, Hills, Riverside, Kalona, Washington, West Branch, West Liberty, Tipton, Muscatine, Oxford, Amanas, Williamsburg, and all other surrounding communities.**

Skid Loaders (Tracked)

Skid Loaders (Wheeled)

Skid Steer (Mini Attachment)

Skid Steer (Mini)

Stump Grinders

Sweepers

Tractor & Attachments

Trailers

Trenchers

Welders

Click Here For Party Rentals

Serving Iowa City, Cedar Rapids, Coralville, North Liberty, Tiffin, Solon, Mt. Vernon, Hills, Riverside, Kalona, Washington,
West Branch, West Liberty, Tipton, Muscatine, Oxford, Amanas, Williamsburg, and all other surrounding communities
with top-quality, affordable equipment rentals and party rentals

Equipment Rentals | Party Rentals | Resources | About Aero Rental | Contact Us

Boom Lift Rentals | Scissor Lift Rentals | Compaction Rentals | Generator Rentals | Ladder Rentals | Hand Tool Rentals | Skid Loader Rentals
Audio/Visual Rentals | Concession Rentals | China Rentals | Chair Rentals | Flatware Rentals | Table Rentals | Tent Rentals | Wedding Rentals

Copyright 2023 RentalHosting.com                                            Last Update: 1/16/2023 6:54:33 AM

EXHIBIT 8

ScienceDirect

# Excavators

The excavator uses electric shovels to gather the mining material and deliver it to conveyors or trucks.

From: The IGBT Device, 2015

Related terms:

Hydraulics, Coal Mine, Demolition, Excavation, Actuators, Regeneration, Teleoperation

---

## Construction Equipment

Ruwan Rajapakse, in Construction Engineering Design Calculations and Rules of Thumb, 2017

### 5.6 Excavators

Excavators are also known as backhoes. Excavators could be wheel type or crawler type. Small scale backhoes are normally wheel mounted while large backhoes are crawler mounted. When the weight of the bucket is large, the arm length is made shorter. On the other hand, some backhoes have longer arms and small size buckets.

*Heap volume and struck volume:* A backhoe bucket has two volumes: Heap volume and struck volume (Fig. 5.15).



Fig. 5.15. Heap volume (left) and struck volume (right).

*Soil type:* Hard cemented soil is difficult to excavate compared to lose sand or loam. Hence, soil type plays a major role in determining the efficiency of a backhoe operation. Bucket efficiency is high when the operator can obtain a full bucket in one scoop. It is possible to obtain a full bucket in one scoop for soils such as loam and loose sand. This is not possible for stiff clay and weathered rock (Table 5.1).

Table 5.1. Bucket fill factor vs soil type

| Soil type | Bucket fill factor (%) |
|---|---|
| Loose sand | 100 |
| Medium dense sand | 90 |
| Dense sand | 80 |
| Soft clay | 95 |
| Medium stiff clay | 90 |
| Stiff clay | 80 |
| Clayey gravel (stiff) | 85 |
| Shale and other rocks (weathered) | 75 |

| Soil type | Bucket fill factor (%) |
|---|---|
| Shale and other rocks (medium hard) | 50 |

*Efficiency of backhoes:* Backhoes have an optimum depth of excavation. A backhoe works at its highest efficiency at this depth. When the depth is too shallow or too deep, the efficiency decreases. The optimum depth of excavation of a given backhoe depends upon its arm lengths and bucket sizes. Backhoe manufacturers will provide the optimum depth of the backhoe.

*Angle of operation:* A backhoe bucket goes down into the excavation and digs soil. Then the bucket lifts up and rotate to dump the soil. The angle that needs to be rotated to dump the soil to a truck is known as angle of operation (Fig. 5.16).



Fig. 5.16. Angle of operation.

When the angle of operation is low, faster operation can be expected. When the angle of operation is high, excavation work slows down. Hence, it is important to make sure that the truck is placed so that the angle of operation is low. In some situations, it may not be possible to maintain a low angle of operation. There could be existing structures, trees, or other obstructions that necessitate trucks being parked far away from the backhoe. Angle of operation is also known as angle of swing.

*Angle of operation and depth of operation:* Table 5.2 gives the productivity factor for various depths of operation and various angles of swing. Productivity factor is also known as A:D factor.

Table 5.2. Productivity factor ($P$) or $A{:}D$ factor

| | Angle of swing ($A$) degrees | | | | | |
|---|---|---|---|---|---|---|
| Optimum depth ratio ($D/D_o$) | 45 | 60 | 75 | 90 | 120 | 150 |
| **0.40** | 0.93 | 0.89 | 0.85 | 0.80 | 0.72 | 0.59 |
| **0.60** | 1.1 | 1.03 | 0.96 | 0.91 | 0.81 | 0.66 |
| **0.80** | 1.22 | 1.12 | 1.04 | 0.98 | 0.86 | 0.69 |
| **1.00** | 1.26 | 1.16 | 1.07 | 1.00 | 0.88 | 0.71 |
| **1.20** | 1.2 | 1.11 | 1.03 | 0.97 | 0.86 | 0.70 |
| **1.40** | 1.12 | 1.04 | 0.97 | 0.91 | 0.81 | 0.66 |
| **1.60** | 1.03 | 0.96 | 0.90 | 0.85 | 0.75 | 0.62 |

*Source:* Power crane and shovel association.

How to use Table 5.2? Let's assume a certain excavator has an 8 ft optimum depth of operation where it has the highest efficiency. Let us say it is excavating at a depth of 9.6 ft.

Optimum depth $D_o = 8$ ft
Depth of operation = 9.6 ft
$D / D_o = 9.6 / 8 = 1.2 = 120\%$

If you travel along a row of 120%, you will see the productivity factor decreasing when the angle of operation increases. If possible, the best productivity can be obtained when the angle of operation is closer to 45 degrees.

On the other hand, let us assume that this backhoe is operating at an angle of 75 degrees. If you come down along the 75 degree column line you will see productivity increasing until $D/D_o = 1.00$. Then the productivity starts to drop.

Productivity is highest at optimum depth. When the operating depth is shallow or deeper productivity drops.

Look at $D/D_o = 1.00$ and angle of swing is 90 degrees. You will see productivity factor to be 1.00. This is the base. Productivity factor goes above 1.00 when the angle of swing is reduced.

*Computation of excavator production:* Excavator production is given by the following equation

$$q = \frac{3600B \times E \times P}{C}$$

$q$ = volume of soil excavated and dumped in a truck by the excavator (CY/h)

$B$ = bucket struck capacity (CY)

$E$ = bucket efficiency factor from table A

$P$ = productivity factor from table B

$C$ = cycle time for 90 <u>degree angle</u> and optimum depth

## Practice Problem 5.7

An excavator with a bucket that has a struck capacity of 1.2 CY and an optimum depth of 8 ft was used to dig a pit that is 10 ft deep. The angle of operation is found to be 120 degrees. The soil is medium stiff clay. The manufacturer of the excavator lists cycle time for 90 degree angle and optimum depth to be 18 s. Find the productivity of the excavator in CY/h.

Solution

$$q = \frac{3600B \times E \times P}{C}$$

$q$ = volume of soil excavated and dumped in a truck by the excavator (CY/h)

$B$ = bucket struck capacity (CY) = 1.2 CY

$E$ = bucket efficiency factor from table A

$E$ = 0.9 for medium stiff clay.

$P$ = Productivity factor from table B

$D / D_o = 10 / 8 = 1.25$
Angle of operation = 120

$D/D_o = 1.2$ and angle of operation 120, gives a $P$ value of 0.86.

Using interpolation $P$ is found to be 0.85.

$C$ = cycle time for 90 degree angle and optimum depth = 18 s (usually provided by the manufacturer).

If the cycle time is not provided by the manufacturer, this value can be ascertained in the field by practice. Have an operator work at optimum depth with an angle of operation of 90 degrees and evaluate the cycle time.

$$q = \frac{3600B \times E \times P}{C} = \frac{3600 \times 1.2 \times 0.9 \times 0.85}{18} = 180 \, \text{CY} / \text{h}$$

## Read less ∧

<u>Read full chapter</u>

URL: https://www.sciencedirect.com/science/article/pii/B9780128092446000056

## A reliable analysis method for estimating large excavator structural strength

Ying Li, ... Samuel Frimpong, in <u>Handbook of Materials Failure Analysis with Case Studies from the Chemicals, Concrete and Power Industries</u>, 2016

### 1 Introduction

Large excavators such as the mining dragline (Figure 10.1a) and shovel (Figure 10.1b) are used for surface mining to dig and transport overburden [1–10]. Their large size front-end structures can swing either left or right during working. The repeated loading induces the front-end to undergo fatigue loading as a result of significant cracking at welded connections [10,11] and fatigue failure as simulated in Figure 10.2. It is estimated that 90% of structural failures in large excavators are due to fatigue alone. Several decades ago, the boom of Peabody Coal Company's